HAMMING STRAMBACK v. FIDELITY MUTUAL LIFE INSURANCE
COMPANY OF PHILADELPHIA.[1]

February 24, 1905.

Nos. 14,194—(223).

**Life Insurance Policy—When Effective.**

A life insurance policy provided that it was made in consideration of the payment in advance of $55.02 on delivery and thereafter upon September 8 and March 8 of each and every year until the premium for fifteen full years should have been paid. The policy further provided, "But in any event this policy shall continue in force only for the period actually paid," and that it should not be in operation until actual payment of the first premium and delivery of the policy during the lifetime and good health of the insured. The forfeiture clause read, "If any premium be not paid when due, this policy shall be void until duly reinstated during the lifetime and good health of the insured."

An application signed by the insured was dated August 25, 1902. The policy issued was dated September 8. The first premium was paid concurrently with delivery of the policy to the insured, September 24, 1902. The second semiannual premium was paid, but the payment due September 8, 1903, was not made, and the insured died September 11, 1903.

*Held,* the policy took effect and the insurance term paid for began at the date of payment and delivery, September 24, 1902, and, upon payment of the second semiannual premium, the period of insurance paid for expired September 24, 1903. The forfeiture for nonpayment of the third semiannual premium did not cover the period of insurance then paid for, but had reference to the future contract of insurance covered by the premium defaulted.

Action in the district court for St. Louis county to recover from defendant $3,000 on a policy of insurance issued upon the life of Charley Stramback, plaintiff's father. Defendant denied liability under the policy, alleging that by its terms it had been forfeited by nonpayment of the stipulated premium when due. The case was tried before Dibell, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiff appealed. Reversed and judgment ordered for plaintiff.

[1] Reported in 102 N. W. 731.

*Washburn, Bailey & Mitchell,* for appellant.

By the terms of the policy it was not to become operative or binding until payment of the initial premium and delivery of the policy to the insured. Such a provision is valid. Kohen v. Mutual Reserve Fund Life Assn., 28 Fed. 705; Misselhorn v. Mutual Reserve Fund Life Assn., 30 Fed. 545; Weinfeld v. Mutual Reserve Fund Life Assn., 53 Fed. 208; Giddings v. Insurance Co., 102 U. S. 108; Newcomb v. Provident, 5 Colo. App. 140; Heiman v. Phœnix Mut. Ins. Co., 17 Minn. 127 (153). The initial premium was paid and policy delivered September 24, 1902. By the terms of the policy the insured was entitled to at least one year's protection for the payment of the one year's premiums which were paid, and the policy was therefore in full force on September 11, 1903, the date of Stramback's death. McMaster v. New York Life Ins. Co., 183 U. S. 25.

It is a universal rule that when policies of insurance contain ambiguous, contradictory, conflicting or inconsistent provisions, effect will be given to the provisions most favorable to the insured and that construction will be adopted which is most favorable to the insured and which avoids forfeiture. McMaster v. New York Life Ins. Co., supra; National Bank v. Insurance Co., 95 U. S. 673; Grace v. American Central Ins. Co., 109 U. S. 278.

*A. L. Agatin,* for respondent.

So far as this case is concerned, the only thing decided by the Mc-Master case, relied on by appellant, 183 U. S. 25, was this: That the policies contained inconsistent provisions, one showing the date to be December 18, 1893, and payment of annual premiums in advance, and the other requiring next payment December 12, or six days before the time for which the first premium was paid. The conclusion arrived at in that case was upon the construction of the language of the policy, containing inconsistent provisions.

The policy as issued and accepted must, in a court of law, be taken as expressing the final agreement of the parties and all the rights of respective parties must be determined by reference to said policy as the sole expositor of the contract of the parties. Insurance Co. v. Lyman, 82 U. S. 664; Insurance Co. v. Mowry, 96 U. S. 544; Thompson v. Insurance Co., 104 U. S. 252; Mobile v. Pruett, 74 Ala. 487; Mc-

Laughlin v. Equitable, 38 Neb. 725; Smith v. National, 103 Pa. St. 177. Where a person receives an insurance policy it is his duty to examine it, and if he neglects to do so, taking it for granted that he has received what he applied for, he is guilty of inexcusable negligence. In law his conduct amounts to an acceptance of the policy regardless of whether it corresponds to the policy applied for or not. Bostwick v. Mutual, 116 Wis. 392; Wilcox v. Continental, 85 Wis. 193; McMaster v. New York Life Ins. Co., 87 Fed. 63; McMaster v. New York Life Ins. Co., 90 Fed. 40.

The policy was forfeited by failure to pay the premium of September 8, 1903. New York Life Ins. Co. v. Statham, 93 U. S. 24; 2 Joyce, Ins. § 1350; 2 May, Ins. §§ 352, 352a.

A contract of insurance such as the one embodied in the policy here, is not a contract for a single year or for any determinate period but for life, subject to forfeiture for nonpayment of premiums. Thompson v. Insurance Co., supra; New York Life Ins. Co. v. Statham, supra; McMaster v. New York Life Ins. Co., 183 U. S. 25; Bryan v. National, 21 R. I. 149. The provision in the policy in question calling for next premium on September 8, 1903, being a valid one, the failure to make such payment, according to all the authorities, had the effect to forfeit the policy, unless the call for such premiums is inconsistent with the provision that the policy shall not take effect until actually delivered. For cases exactly in point on this proposition, we cite: Methvin v. Fidelity, 129 Cal. 251; McConnell v. Provident Savings Life Assur. Soc., 92 Fed. 769; Bryan v. National Life Ins. Co., supra; Tibbits v. Mutual, 159 Ind. 671.

LEWIS, J.

August 25, 1902, Charley Stramback made application to defendant insurance company for $3,000 insurance upon his life; his children to be the beneficiaries. The application stated that the policy to be issued should not become binding on the company until the first payment due should have been actually received by it, or its authorized agent, during the lifetime and good health of the insured. The policy contained this provision:

> This contract is made in consideration of the written application of the above named insured, which is made a part hereof,

> a copy of which is hereto attached, and the payment in advance to said company of $55.02 on the delivery of this policy, and thereafter to the company at its head office in the city of Philadelphia, upon the eighth day of the months of September and March in every year until the premiums for fifteen full years shall have been duly paid to the said company.

Among the general provisions in the policy is one to the effect that the application forms the sole basis of the contract, which shall not be operative or binding until actual payment of the initial premium and delivery of the policy during the lifetime and good health of the insured. And also:

> If any premium be not paid when due, this policy shall be void until duly reinstated during the lifetime and good health of the insured.

The policy was forwarded from Philadelphia and delivered to the insured September 24, 1902, at which time the first premium was paid. The second semiannual payment, due March 8, 1903, was paid, but the next premium, due September 8, 1903, was not paid, and three days thereafter, September 11, the insured died. The trial court held that the policy became forfeited September 8, 1903, for failure to pay the premium due on that date.

The primary question to be determined is, from what date did the insurance commence to run? Was it from date of payment of the first premium and delivery of the policy to the insured, September 24, or was it from date of issuance of the policy, September 8, or from date of the application, August 25? According to the findings, the delivery of the policy and payment of the first premium were concurrent acts. It is a curious fact that the application and the policy are silent as to the date from which the policy shall commence to run. Defendant takes the position that it is necessarily implied by the language of the documents, by the usual course of insurance business, and by the conduct of the parties, that the insurance commenced to run from the date of the policy, but did not become effective or operative until payment of the first premium and delivery of the policy.

Whatever may have been the purpose of leaving unstated the specific date at which the contract commenced to run, we are of the opin-

ion that the inference drawn by defendant from the facts of this case is unwarranted.    The rule of construction to be applied here is that the instrument shall be construed strictly against the insurer.    It would have been a very easy matter to insert a clause to the effect that the policy should take effect from its date, if such was the intention of the insurer, and, in the absence of any such provision or agreement on the part of the insured, the following provision should control:

> The application, copy of which is given on third page, forms the sole basis of this contract which shall not be operative or binding until the actual payment of the initial premium and delivery of the policy during the lifetime and good health of the insured.

This language, taken by itself, means not only that the contract became effective upon the date of payment and delivery of the policy, but also that the policy commenced to run from such date.

Defendant refers to the following clause in the policy in support of its theory that it was contemplated by the parties that the period of insurance paid for was to begin September 8, and not at the time of payment and delivery:

> This contract is made in consideration of the written application * * * and the payment in advance to said company of $55.02 on the delivery of this policy, and thereafter to the company at its head office in the city of Philadelphia upon the eighth day of the months of September and March in every year until the premiums for fifteen full years shall have been duly paid to the said company.

It may be admitted that, if this clause were the only provision relative to the subject, it might be susceptible of such meaning, but this language must be read in connection with other provisions, viz., the following:

> The premiums hereon may be paid annually, semiannually or quarterly, in advance, in accordance with the company's table of rates applicable hereto, but in any event this policy shall continue in force only for the period actually paid.

In our judgment, the significant thing is the payment of the premium in advance, and not the date of its payment; and the insured, when

furnished with the policy, was entitled to assume that by the payment of the semiannual premium he had paid for half a year's insurance, and he was advised that all subsequent premiums were required to be paid on the eighth of March and September, but what was there to call his attention to the fact that the period of insurance was to date from the day of such payments? If such is the custom and practice of insurance companies, and the insured had knowledge of it, the record is silent upon that point. The argument is advanced that it would tend to much confusion if insurance policies were required to run from the date of their delivery, instead of the date of their issuance; but, on the other hand, it may be said that the insured could be deprived of insurance already paid for, were the company permitted to fix conditionally the inception of the term of insurance at the date of the policy, dependent upon subsequent payment and delivery. This period between the dating of the policy and its delivery, under such construction, would inure to the benefit of the company, for it is conceded that if the insured in this case had died between the issuance of the policy, September 8, and the payment of the premium and delivery of the policy, September 24, the company would not have been liable. Our conclusion on this point is that it was contemplated by the parties, as gathered from their conduct and the documents, not only that the policy became effective September 24, but also that the insurance paid for by the initial premium had its inception September 24.

Having determined that the insurance period paid for began September 24, 1902, it follows that it would have expired March 24, 1903, had the premium not been paid, but it was paid, and therefore the policy remained in force until forfeiture by nonpayment of the next semiannual instalment. The insurance period covered by the first and second premiums expired September 24, 1903, and, the insured having died September 11, the policy was in force, unless forfeited by a failure to make the payment due September 8. Whether it was forfeited depends upon the meaning of the language chosen to express the forfeiture, which reads:

> If any premium be not paid when due, this policy shall be void until duly reinstated during the lifetime and good health of the insured.

In our judgment, this language was used with reference to the continuation of the policy after the period already paid for. Forfeitures are not favored in the law, and any other conclusion would work a hardship upon the insured, and should not be upheld unless required by the terms of the contract.

It was proper for the insurer to provide that the premium should be paid in advance of the commencement of the period of insurance covered by such payment. As stated in New York Life Ins. Co. v. Statham, 92 U. S. 24, contracts of this character are not contracts of assurance for a single year, with the privilege of renewal from year to year by paying the annual premium; but they constitute entire contracts of assurance for life, subject to discontinuance or forfeiture for nonpayment of any of the stipulated premiums. This theory is reiterated in McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 Sup. Ct. 10. Looking at the contract, therefore, as being one of insurance for life, the most reasonable view is that failure to pay a premium due on a certain date was intended to strike at the contract for the future, and not that part of the contract already executed.

This point, we think, is covered by the reasoning in McMaster v. New York Life Ins. Co., where application was made and payment fixed on December 12, and the policy was issued and dated the 18th, and delivered December 26. The insured died thirteen months after the date of the policy, or the last day of grace; and one of the questions before the court was whether the period of insurance had its inception at the time fixed for payment, December 12, or at the date of the policy, December 18. In this respect the court said: "Notwithstanding the premiums in this instance were not actually paid and received, and the policies delivered, until December 26, it may be conceded that, and in accordance with the practice in such matters, the contracts of insurance commenced to run from December 18, rather than from December 26. They were certainly not in force on December 12." It will be observed that the court conceded the insured period ran from the date of the policy, rather than from the date of its delivery; but whether it did, or not, was not decided, because the question before the court was whether or not the policy was forfeited upon failure to make the payment on December 12. "We are dealing purely with the question of forfeiture, and the rule is that if policies of insurance contain incon-

sistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain, rather than forfeit, the contract." And in discussing the effect of the forfeiture clause, it was stated: "To hold the insurance forfeitable for nonpayment of another premium within the year for which payment had already been fully made would be to contradict the legal effect, under the applications and policies of the first annual payment. Clearly such a construction is uncalled for, if the words 'the twelfth day of December in every year thereafter' could be assumed to mean in every year after the year for which the premiums had been paid." The court concludes: "In our opinion, the payment of the first year's premiums made the policies nonforfeitable for the period of thirteen months, and inasmuch as the death of McMaster took place within that period, the alleged forfeiture furnished no defense to the action."

We have examined Methvin v. Fidelity, 129 Cal. 251, 61 Pac. 1112, Tibbits v. Mutual, 159 Ind. 671, 65 N. E. 1033, and Bryan v. National, 21 R. I. 149, 42 Atl. 513, and find the facts therein to be somewhat different from those involved in this action; but, so far as the legal principles announced are in conflict with our views herein expressed, we are unable to follow them.

Judgment reversed, and judgment ordered for plaintiff.

BROWN, J. (dissenting).

I am unable to concur with my brethren in this case. The intention of the parties, as expressed by their written contract, should prevail, though the result be to deprive plaintiff of his right of recovery. Fairly construed, it seems clear that the parties intended the policy to become operative and in force as of its date, though the first premium was not paid for sixteen days subsequent to that date. So construed, it had expired at the date of the insured's death. The confusion likely to result from the decision may well be imagined. Thousands of life insurance policies heretofore issued will become wholly indefinite and uncertain as to the time when they will lapse for nonpayment of premiums, and give rise to controversies as to the date of actual delivery —a condition, if the contract in this case is a fair guide, the parties intended to guard against.