**Grace Stramaglia, Appellee, v. Conservative Life Insurance Company of Wheeling, West Virginia, Appellant.**

**Gen. No. 42,470.**

Opinion filed May 5, 1943.

ARTHUR S. LYTON and OLAF A. OLSON, both of Chicago, for appellant; PETER J. BENDA, JR., of Chicago, of counsel.

McCABE, ABRAHAMS & DALY and NUNZIO GIAMBALVO, all of Chicago, for appellee; NUNZIO GIAMBALVO and LEO O. McCABE, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

John C. Nuzzo is the State agent for the Conservative Life Insurance Company of Wheeling, West Virginia. In 1940 an agent for this company, Vito C. Partipilo, worked out of the office of Mr. Nuzzo. Mr. Partipilo successfully solicited Vitangelo Stramaglia of Chicago to apply for a life insurance policy in the sum of $2,000, at an annual premium of $93.36. Part 1 of the application is dated April 4, 1940. He designated his wife, Grace Stramaglia, as beneficiary. A clause of the application reads: "That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to me during my lifetime and good health." Part 2 of the application, for the medical examiner, is dated April 5, 1940. The policy, with a copy of the application attached thereto as a part thereof, was issued by the company at its home office in Wheeling, West Virginia on April 17, 1940 as of April 5, 1940. The policy was then forwarded to Mr. Nuzzo, the State agent of the company at Chicago, for delivery. It was received in Chicago on or about April 18, 1940, Mr. Nuzzo gave the policy to the agent, Mr. Partipilo, on the same day, for delivery to the insured. At the time the application

was signed insured paid the agent $3 on account of the first annual premium. On April 19, 1940 insured paid the agent an additional sum of $30 and delivered to the agent a promissory note signed by the insured and his wife, covering the balance of the first year's premium on the policy, and also covering a policy on the life of insured's son. The latter policy is not involved. The policy was not physically delivered to the insured until May 8, 1940. The note given on April 19, 1940 was paid by instalments over a period extending to February 1941. The policy provides that the first year's insurance thereunder "is modified preliminary term insurance," and also states that it is issued "in consideration of the application therefor, copy of which is hereby attached and made a part of this contract, and of the payment in advance of $93.36 for the term of one year from the date hereof." The policy also contains the following clause: "In further consideration of the first year's premium this insurance will be renewed upon the payment of a like amount on or before the 5th day of April in each year during the lifetime of the insured. A grace of one month (not less than 30 days) will be granted for the payment of each premium after the first, during which time this policy shall continue in full force." The second annual premium was not paid. Vitangelo Stramaglia died on May 20, 1941. His widow and beneficiary, Grace Stramaglia, filed an amended complaint in the circuit court of Cook county against the company to recover on the policy. After issue joined the case was tried before the court and a jury. At the close of all the evidence the court sustained a motion by plaintiff for a directed verdict in her favor, and thereupon such a verdict was returned by the jury and judgment entered in favor of plaintiff and against defendant for $2,100, being the face value of the policy, plus interest. Defendant prosecutes this appeal for the purpose of reversing the judgment.

It is plaintiff's theory that the policy of insurance did not become effective until it was delivered to the insured on May 8, 1940; that in consideration of the annual premium paid by the insured he was to receive one full year's insurance; that the insurance could not be forfeited or lapsed and did not terminate until May 8, 1941, plus 30 days' grace; that any other terms in the policy providing for the payment of a second annual premium on April 5, 1941, or indicating a forfeiture or lapsation for nonpayment of premium on that date, are not to be construed as denying to the insured the full year of insurance protection the policy means to give him and which he paid for; that the policy remained in full force and effect until May 8, 1942, plus 30 days' grace, and was so in force and effect at the time of the insured's death; that assuming that the policy could have been forfeited and lapsed on April 5, 1941, the defendant failed to forfeit and lapse the same in accordance with a statute of this State. Defendant's theory is that by its express terms the policy became and was in effect as of April 5, 1940 and was subject to renewal only by payment of the second premium on April 5, 1941 (or within the grace period thereafter) which premium was never paid or offered; that under the terms of the policy and the uncontradicted facts the effective date of the policy, as a proposition of law, was not controlled by the date of physical delivery of the policy to the insured, whether on May 8, 1940, as alleged by plaintiff, or on April 19, 1940, as indicated by the record; that under any of these hypotheses the policy was not in force or effect on May 20, 1941, the date of insured's death.

An examination of the record discloses that there is no substantial dispute as to the facts. It is conceded that when on April 19, 1940, the insured gave to the agent the promissory note signed by himself and his wife for the balance of the premium, this constituted payment of the premium. The evidence introduced by

plaintiff establishes that the policy was not delivered to the insured until May 8, 1940. Defendant, however, states that the testimony as to delivery is inconsistent with the several payments made by the insured, the promissory note for the balance of the premium given by the insured on April 19th and the receipt for the premium given him "apparently on April 19, 1940," acknowledging payment of the first premium continuing the policy in force only until April 5, 1941.

Defendant asserts that parties to a life insurance contract are entitled to agree upon its terms, including the dates and conditions upon which it takes effect, terminates or may be renewed, and that it is the duty of the courts to enforce such agreement and not to substitute another and different one. Plaintiff agrees with this statement, but urges that the stipulation in the application (which is a part of the policy) that the insurance shall not take effect unless the policy is delivered to insured during his lifetime and good health, is a valid provision, and renders the policy inoperative and without force and effect until delivery to the insured. The evidence clearly shows that the policy was not delivered until May 5, 1940. Plaintiff maintains that the insurance did not become effective until the policy was delivered and that the premium of $93.36 was intended to pay for coverage for one year. She insists that the insurance remained in full force and effect for a period of one year after delivery of the policy, plus a period of 30 days' grace, and argues that as the insured died on May 20, 1941, within the period of grace, the policy was in effect at that time and that the court was right in directing a verdict in her favor. Defendant correctly states that a contract of insurance, like any other agreement, consists of an offer by one party and the acceptance thereof by the other. Defendant maintains that in the instant case the offer consisted of an application by Vitangelo Stramaglia for a policy of insurance upon his life;

that the offer was accepted by defendant by its issuance of the policy exactly as applied for; that the policy was dated April 5, 1940 and by its terms was subject to renewal only by and upon payment of a similar amount of $93.36 on April 5, 1941 and annually thereafter; that everything in the policy, including the contestability and suicide clauses, dated from the date of the policy; that by the express terms of the agreement there can be no doubt that the policy became effective as of April 5, 1940 and continued in effect only until April 5, 1941, when the second premium became due; that when, on April 19, 1940, the insured paid an additional cash amount on the premium and gave the agent his promissory note (also signed by plaintiff) for the balance, the insured was furnished with a written receipt stating that the payment continued "the insurance in force until April 5, 1941"; that both the policy and the receipt were accepted, paid for and retained by the insured without question or comment; that no fraud was practiced upon the insured; that no misrepresentation was made to him; that there was no agreement or provision in the contract that the effective date was to be deferred until the date of physical delivery; that there was no ambiguity in the contract, no doubtful language calling for judicial interpretation, and that the trial court was in error in directing a verdict for plaintiff. Consistent with the foregoing, on April 17, 1941 defendant wrote the insured telling him that some time ago "we forwarded notice of the premium due April 5th." This letter also informed insured that a grace period of one month is provided, which grace period would expire on May 5, 1941. Defendant stated that it was taking that means to again call the matter to his attention and that it was its desire to assist him in every way possible to continue the protection in force. On May 9, 1941 defendant wrote plaintiff another letter, reciting the lapsation of the policy and offering to re-

instate it upon the terms specified. The insured made no acknowledgment of or response to these communications and made no payment of the second premium. We find that the uncontradicted evidence shows that the receipt for the full amount of the premium was delivered to the insured at the time the policy was delivered to him, namely, May 8, 1940. It is interesting to note that Mr. Nuzzo, the State agent of defendant, testified that Mr. Partipilo, the agent, paid that part of the premium which was not to be retained by the agent to his (Nuzzo's) office on May 9, 1940, the date following the delivery of the policy to the insured.

The law is well established that if all the terms have been agreed upon between the parties, the formal delivery of the policy by the insurer and its acceptance by the insured are not essential to its validity, but if the terms have not been agreed upon, or if the application provides, and it is a condition of the policy itself, that it shall not become effective until it is delivered to the applicant, the contract of insurance will not become binding until such delivery. In the instant case the application and the policy constitute the contract between the parties. The first annual premium was paid on April 19, 1940. Had the agent delivered the policy to the insured on that day, plaintiff could not recover as the insured died on May 20, 1941, which was one day after the expiration of the period of grace. Defendant contends that the insurance became effective as of April 5, 1940. It is apparent that if the insured died before the policy was delivered to him the insurance would not be in effect and recovery could not be had on the policy. Defendant states that the provision that the contract should not take effect unless the policy was delivered during the lifetime and good health of the insured was intended only for the protection of the insurer against illness contracted between the dates of application and issuance, respectively, citing *Johnson v. Royal Neighbors of America,*

253 Ill. 570; *Hungate v. New York Life Ins. Co.,* 267
Ill. App. 257. We are of the opinion that the purpose
of the provision is to protect the insurer against ill-
ness contracted between the dates of the application
and the delivery of the policy, and also to protect the
insurer against liability in case of death of the insured
before delivery of the policy. From a careful reading
of the cases, we are convinced that the insurance com-
panies consider the provision concerning delivery of
the policy to be important. In some of the cases cited
evidence was introduced of written instructions by the
insurance companies to their agents as to delivery and
these instructions pointed out that delivery of the
policy was not to be made until the agent had ascer-
tained that the insured was alive and in as good a state
of health as at the time of the application. *Weber v.
Prudential Ins. Co. of America,* 208 Ill. App. 117. The
record in the instant case does not indicate what in-
structions, if any, were given to the agent. In *Hun-
gate v. New York Life Ins. Co.,* 267 Ill. App. 257, the
court, in speaking of contracts of insurance containing
provisions that they should not take effect until the
first premium was paid, nor unless on the day of pay-
ment thereof the insured was alive and in sound
health, said:

"It has been held that if any length of time elapses
between the making of the application and the issu-
ing of the policy, it is the duty of the insurer to make
inquiry when the policy is delivered as to the condi-
tion of the health of the insured, and if it fails to do so
the delivery is conclusive against the insurer as to the
completion of the contract."

In the *Hungate* case the court cited *American Trust
Co. v. Life Ins. Co. of Virginia,* 173 N. C. 558, 92 S. E.
706; *Grier v. Mutual Life Ins. Co.,* 132 N. C. 542, 44
S. E. 28; *National Life Ins. Co. v. Grady,* 185 N. C. 348,
117 S. E. 289. From these cases it is apparent that

the courts considered that the provision of the application as to delivery of the policy was intended to give the insurance companies and their agents the power to withhold delivery of the policy until the premium was paid during the lifetime of the insured while he was in good health.

We agree with plaintiff that the case at bar is a suit upon a policy containing a "delivery provision" and that the general proposition of law stated by defendant that actual delivery of a policy of insurance is not essential to its validity, has no application. From the cases cited we are satisfied that the giving of the policy to the subagent for delivery to the insured did not constitute delivery to the insured. We do not doubt that under the facts of some cases the agent would be deemed to have received delivery of the policy as agent of the insured and to be holding the policy for the insured. However, that is not the case here. Mr. Partipilo, the agent, did not testify, and the record is silent as to why he did not deliver the policy until May 8, 1940. Defendant states that some policies, or the applications therefor, contain the provision that the contract shall not become operative "until and unless delivered in the lifetime and good health" of the insured, and that even in such cases the courts have held consistently that the sole purpose of the provision is to preclude the consummation of the contract in cases where the applicant has contracted a disease between the date of the application and the issuance of the policy. Defendant points out that the word "until" was not used in the contract in the instant case, that this word involves the element of time, that the application provided that the insurance should not take effect "unless the first premium is paid and the policy delivered" in the lifetime and good health of the insured, that these conditions were met and the offer having been accepted as made, the contract became effective in accordance with its terms.

Defendant argues that no time element being involved, payment of premium and physical delivery to the insured could be made at any time; that the premium was actually paid on April 19, 1940 and the policy delivered during the lifetime and good health of the insured and that the policy became operative as and when provided therein and the second premium became due as and when stipulated. We agree with the statement of plaintiff that there can be no recovery unless the policy is delivered during the lifetime of assured and that if the policy is delivered when the insured is in bad health (leaving aside waiver) there is still no coverage, and that if the policy is paid for, issued, and in the hands of the agent, but not delivered, and the applicant is in perfect health, there is still no insurance. Obviously the policy cannot be delivered after the death of insured. We have examined the cases cited and find that the words "unless" and "until" are used interchangeably, and that the word "unless" as used in the application in the instant case may be construed to have the same effect as the word "until" used in other policies that have been passed upon by the courts.

Plaintiff asserts that where a policy of insurance contains inconsistent, conflicting and ambiguous provisions, the one which affords the most protection to the insured will control. We find that this statement is sustained by the authorities. In Vance on Insurance (2d ed.) page 287, there appears the following succinct statement:

"An interesting and important question concerning forfeiture of policies for nonpayment of premiums has arisen out of the practice of insurers to date policies issued as of the same date with the application, which is also made the date for the payment of the recurring annual premiums, while the policy does not in fact take effect as a contract until delivery and payment of the first premium at a somewhat later date. The result

is an inconsistency between the several terms of the contract. Upon payment of the first premium and delivery of the policy the insured is, under its terms, entitled to insurance for one year. Since the insurance usually begins only with the delivery of the policy, and not from the date written upon it, the year during which the insured is entitled to protection should begin on the day of delivery and extend to the same day in the succeeding year. Yet the policy also provides that if a premium falling due at a date, specified in the policy, earlier than the last day of the year stipulated for, shall remain unpaid, the policy shall be forfeited. Put briefly, the insurer by one term of his contract sells the insured protection for one year from a certain date, and then in another term declares the failure to pay a premium within that year will cut short the insurance bargained and paid for. One term insures for a whole year, another for part of a year. Applying the well settled rule that in cases of uncertainty and repugnancy the court will always adopt that construction which will avoid a forfeiture, it would seem safe to conclude that the insurer will not be allowed to declare the insurance forfeited before the expiration of a full year from the time when the policy is delivered, even though the express terms of the contract may render it forfeitable upon failure to pay an annual premium at an earlier day.''

This subject is discussed in *Shinall v. Prudential Ins. Co. of America,* 91 Colo. 194, 14 P. (2d) 183; *Stramback v. Fidelity Mut. Life Ins. Co. of Philadelphia,* 94 Minn. 281, 102 N. W. 731; *Halsey v. American Cent. Life Ins. Co.,* 258 Mo. 659, 167 S. W. 951; *Johnson v. American Cent. Life Ins. Co. of Indianapolis, Ind.,* 212 Mo. App. 299, 249 S. W. 115. We agree with the contention of plaintiff that the policy of insurance provides in numerous places for one year's insurance. On the back of the policy appears the statement:

"Premiums on this policy may be paid annually; Rate $93.36." The application, par. 7 (e), reads: "Annual premium $93.36." In the middle of the first page of the policy appears the following statement: "The first year's insurance under this policy. . . ." The policy at this point also states: "In further consideration of the first year's premium . . . ." The last paragraph of the policy reads: "The mode of premium payment may be changed from annual to semi-annual or quarterly installments, or vice versa." Mr. Nuzzo testified that the premium on the policy is "correctly set forth as $93.36; that premium is for one year; is calculated by taking into consideration the age of the insured, the type of insurance, on one year's basis." The books and records of defendant provided for one full year's insurance. The policy ledger sheet of defendant reads: "Premium for full year, $93.36." The termination sheet of defendant reads: "Premium for full year." Defendant's original card reads: "Amount of premium, annual, $93.36. Net premiums, first year." Defendant's premium receipts ledger sheet reads: "Premiums, first year, $93.36." The receipts issued by defendant to the insured all provide for an "annual premium" or a first year's premium. The receipts given to the insured as payments were made to read: "First annual premium on the policy." The receipt given to the insured for the full amount of the premium reads: "For $93.36, in payment of first year's premium." We agree with plaintiff that it is evident from the terms of the policy, the testimony of the State agent, the language of the receipts issued and the wording and contents of the books and records of defendant, that the latter intended to and in fact did contract to provide the insured with one full year's insurance, and that the insured intended and in fact did contract to and did receive one full year's insurance, for which protection he paid one full year's premium. The ap-

plication for insurance provides that "the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to me during my lifetime and good health." The receipts recite the following: "Being the first annual premium on a policy applied for on this day with the understanding that the policy shall be in force if issued and delivered in accordance with the provisions of the application." The policy provides: "This policy is issued in consideration of the application therefor, copy of which is attached and made a part of this contract, and of the payment in advance of $93.36 for a term of one year from the date hereof." The policy also provides: "In consideration of the first year's premium this insurance will be renewed upon the payment of a like amount on or before the 5th of April in each year during the lifetime of the insured." These provisions seem to indicate that the insurance was for a full year, plus a 30 day grace period. We agree with the contention of plaintiff that it is apparent that the several provisions recited are ambiguous, inconsistent and in conflict with each other and render the time uncertain as to when the insurance is to terminate. The provision indicating termination on April 5, 1941 would actually give to the insured protection for a period of less than 11 months. The provision appearing in the application and premium receipts governing the date the insurance is to take effect, would terminate the policy on May 8, 1941, plus a 30 day grace period. This provision would give the insured one full year's insurance. It is our view that this is what plaintiff sought to purchase and in fact did purchase. We have read and analyzed the numerous cases and text books cited by the respective parties and believe we have followed the trend of thought. A discussion and differentiation of these cases would not be helpful.

Plaintiff asserts that assuming that the defendant insurance company had a right to forfeit or lapse the

contract of insurance on April 5, 1941 (after 30 days' grace), no forfeiture or lapsation was ever effected, and cite par. 1, sec. 846, ch. 73, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 66.909], that:

"No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium, installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of non-payment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace. Such notice shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy. The affidavit of any officer, clerk or agent of the company or of any one authorized to mail such notice that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given."

Plaintiff contends that the record is void of any evidence establishing a compliance with this requirement.

Defendant sought to prove, by the reading of the transcript of the testimony taken by deposition of Clem E. Peters of Wheeling, West Virginia, president and manager of defendant, that a premium notice in accordance with the above statute was mailed to the insured in due time prior to April 5, 1941. Defendant used a regular form of notice, which was sent out a month prior to what it contends was the due date of the annual premium. The form of notice is kept in the records of defendant. Defendant also offered as an exhibit an affidavit by Mary M. Dailer, a clerk, showing that notice in due form was mailed to insured during the month of March 1941. The court excluded the proffered evidence apparently on the ground that it was secondary. It will be observed that the statute provides that the affidavit of any officer, clerk or agent of the company, or of any one authorized to mail such notice, that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given. As the legislature had the right to require the notice to be given, it also had a right to prescribe how the giving of the notice could be proved. We are of the opinion that the court erred in excluding the testimony as to the giving of notice in accordance with the statute.

We find that the record is free from reversible error. The judgment of the circuit court of cook county is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.