SCOTT J. LOGSDON, Plaintiff-Appellant, v. SHELTER MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Third District   No. 3—85—0343

Opinion filed June 2, 1986.

Fred A. Bernardi, of Bernardi & Bode, of Pekin, for appellant.

Karen J. Steele and Robert D. Jackson, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Scott Logsdon, suffered serious injuries, including the loss of his left leg below the knee, as the result of being struck by an automobile driven by Ronald Hoskinson on October 1, 1983. Plaintiff alleges that he incurred medical expenses in excess of $30,000. He is an insured as a "relative" under a family automobile insurance policy issued by defendant, Shelter Mutual Insurance Co. (Shelter). His mother, Betty Logsdon, is the named insured. At the time of the inci-

dent Hoskinson was covered by a policy providing bodily injury liability insurance up to $30,000 for one person, and that amount was paid to plaintiff by Hoskinson's insurer.

The bodily injury and uninsured-motorist coverage limits stated in Logsdon's policy with Shelter were $25,000 each per person/$50,000 per occurrence at the time of the accident. No underinsured-motorist coverage, however, was included in the policy. Plaintiff's claim for benefits under the policy from Shelter was refused.

Plaintiff filed suit against Shelter in the circuit court of Tazewell County. In the two counts of the amended complaint which are at issue here, plaintiff sought a declaration that he is entitled to underinsured-motorist coverage by reason of the insurer's failure to offer such coverage pursuant to section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2), and further relief based on the same allegations pursuant to the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*). Defendant's motion to dismiss both counts for failure to state a cause of action was granted by the trial court on grounds that plaintiff had recovered more from Hoskinson's insurance company than could be implied at law into the Logsdon's Shelter policy. Plaintiff appeals.

The issues presented in this appeal are: (1) whether an insured's remedy for an insurer's violation of its statutory duty to offer underinsured-motorist coverage is limited to implication of underinsured-motorist coverage in the amount of his uninsured-motorist coverage; and (2) whether plaintiff's allegations based on Shelter's breach of its duty to offer underinsured-motorist coverage will support a cause of action under the Consumer Fraud statute. Having considered the allegations of the pleadings and the arguments of the parties on appeal, we answer the former in the negative and the latter in the affirmative.

In reviewing a ruling on a motion to dismiss, all facts well pleaded in the complaint are regarded as true and admitted, and all reasonable inferences which can be fairly drawn from the facts alleged are also considered as true. (*Wilcyznski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479.) Assuming, therefore, that defendant breached its statutory duty to offer underinsured-motorist coverage on April 6, 1983, when the policy in question was last renewed prior to the accident, or at any time prior thereto, the ultimate question before us is, What is the scope of the remedy available to the insured? This precise question, it appears, has never been addressed directly by a court of review in this State. Defendant urges that we affirm the trial court's

disposition primarily on grounds that the at-fault driver, Hoskinson, was not by statutory definition "underinsured," because the amount of his bodily injury liability exceeded the amount of uninsured-motorist coverage provided in Logsdon's policy. Defendant cites as support for its position *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956, and section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2).

In *Tucker*, the issue raised on appeal was "whether the defendant [insurer] made a *proper* offer of underinsurance coverage to its insured as required by section 143a—1 of the Illinois Insurance Code." (Emphasis added.) (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 332-33, 465 N.E.2d 956, 959.) In *Tucker*, the insured received a renewal notice from defendant Country Mutual in August of 1980 along with a letter advising him generally that underinsured-motorist coverage was being offered by the insurer and that the insured should contact his insurance agent if he wanted to add such coverage. The trial court in *Tucker* held, on the basis of the four-part test set forth in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, that "no meaningful offer of underinsurance coverage had been made by the defendant, [therefore] underinsurance coverage would be included in the policy in an amount equal to the limits for uninsured coverage." (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 332, 465 N.E.2d 956, 958-59.) On review, the appellate court concluded:

> "[M]erely because Tucker stated that he received no notice does not indicate whether the notice was sufficient to comply with the statutory requirement of an offer. As the trial court noted the conclusion that the named insured received the notice and did not elect underinsurance coverage is not an admission that he understood what he had been offered or that he rejected the coverage. Since we find that the defendant made an insufficient offer under the requirements of the statute, the trial court's judgment implying underinsurance coverage in plaintiff's policy by operation of law in limits equal to her uninsured motorist coverage is affirmed." *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 337, 465 N.E.2d 956, 962.

The facts relating to the extent of plaintiff's injuries and the amount of uninsured-motorist coverage provided by the policy at issue in *Tucker* shed some light on why the question as to the *extent* of underinsurance to be implied into the policy was not addressed by the reviewing court. Martha Tucker was insured under a policy in which

her husband was the named insured. His policy as renewed in August 1980 provided uninsured-motorist coverage of $100,000/$300,000, but no underinsurance coverage. Martha's injuries, as alleged in her complaint, were in an amount in excess of $20,000. The driver of the at-fault vehicle carried liability insurance up to $15,000, which was tendered to Martha by the at-fault driver's insurer. Since it was alleged that Mrs. Tucker's injuries exceeded $100,000, the amount of her uninsured-motorist coverage and the amount of underinsurance implied into the policy by the trial court, the issue that we face today—whether the amount of uninsured-motorist coverage delimits the amount to be implied by law—was not argued or addressed on review.

Moreover, *Tucker* was decided on the basis of former section 143a—1 of the Code, under which an underinsured motorist was defined as "an insured, at-fault driver whose liability coverage limits were insufficient to compensate the injured insured for all damages he was legally entitled to recover." (*Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 467-68, 452 N.E.2d 49, 52.) Thus, so long as Mrs. Tucker's damages exceeded $15,000, the at-fault driver was "underinsured" without regard to the amount of underinsurance provided in the Tucker policy.

The statute was subsequently revised, however, effective September 3, 1980, and currently defines an "underinsured motor vehicle" as one "for which the sum of the limits of liability *** is less than the limits for underinsured coverage provided the insured." (Ill. Rev. Stat. 1983, ch. 73, par. 775a—2(3).) The definitional change in the statute, which defendant interprets as a legislative grant of relief from liability under the circumstances here presented, represented a shift in the legislative purpose of the risk being insured against. Under prior law, underinsurance purported to protect its insured against the risk of uncompensated damages. Under the present definition, which controls here, underinsurance protects against the risk of recovering less from an insured driver than would have been recoverable from an uninsured driver. *Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 468, 452 N.E.2d 49, 53.

While we agree with defendant that the revised definition represents legislation favorable to the insurer, we are unwilling to extend the favorable treatment in the manner urged by this defendant. Were we to subscribe to the defendant's line of reasoning, that the definition of underinsurance contained in 143a—2(3) necessarily delimits the amount of coverage that may be implied by law, we would effectively obviate the insurer's duty to offer underinsured-motorist coverage

with any policy providing minimum coverage for bodily injury. (See *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263, wherein the court held that plaintiff insureds stated a cause of action for common law fraud based on allegations that insurers sold underinsurance coverage at the minimum level of $15,000/$30,000 for which, by definition (section 143a—2(3)), no recovery could be had. According to defendant's reasoning, the risk assumed by an insurer who fails for any reason to execute its duty to offer underinsured-motorist coverage (wilfully or otherwise) would increase in direct proportion to the amount of the insured's bodily injury liability.

In the case at hand, for example, it appears that Mrs. Logsdon has been insured by Shelter since 1975 and that the policy has been renewed every six months up to at least the time of the accident. Although legislation requiring insurance companies to offer underinsured-motorist coverage has been in place since March of 1980, Shelter does not deny that it never made the required offer at any of the seven renewal periods between the effective date of the legislation and the last renewal date prior to Scott's accident. Whether Shelter's disregard of its statutory duty was unique to this policyholder or whether such was Shelter's standard practice cannot be ascertained at this state of the pleadings. (The inquiry of course is relevant to plaintiff's count alleging violation of the Consumer Fraud and Deceptive Practices Act.) In any event, Shelter, according to its logic, risked only a maximum of $10,000 (the difference between the statutory minimum coverage of $15,000 and the $25,000 coverage carried by Mrs. Logsdon) for failing to provide any offer or information whatsoever to Mrs. Logsdon about the availability and costs of underinsurance and the premiums applicable for increased basic insurance coverage.

■ One purpose of the legislation at issue was to ensure that insureds be provided adequate information so that they could make intelligent, informed decisions on the coverage they want and are willing to pay for. (See *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 334-35, 465 N.E.2d 956, 960, quoting Senator Berman, Senate debates, June 27, 1980, on Pub. Act 81—1426, at 73.) We find no legislative intent to dilute the insurer's duty to provide adequate information for purposes of policies written, as here, at the lower levels of basic liability or otherwise. In our opinion, the duty imposed by the legislature to provide adequate information about the additional coverage applies for the benefit of all insured motorists, regardless of the level of an insured's basic liability coverage. Accordingly, we hold that an insurer who violates the requirement

that it offer the additional coverage pursuant to section 143a—2 may not seek refuge in any protection afforded by the current statutory language. Rather, when the insurer fails to perform its duty to make a meaningful offer, and certainly when as here no offer at all is made, an appropriate remedy may be fashioned pursuant to section 442 of the Code. That section provides that the policy in question be construed in such fashion that "the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto." Ill. Rev. Stat. 1983, ch. 73, par. 1054.

Since we have determined that neither the holding in *Tucker* nor the current definition contained in section 143—2a(3) delimits the amount of underinsurance to be implied at law, we believe we must address whether any limit applies and, if so, where it may be found.

After the parties had briefed and argued their positions in this case, our supreme court handed down its opinion in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, and plaintiff moved to supplement the opinion as authority supporting his arguments. *Cloninger* appears to be factually analogous to the instant case, but the only issue preserved for review concerned, as in *Tucker*, the sufficiency of the insurer's offer. We find the decision in *Cloninger* significant to the issue before us, however, because it was decided on the basis of the current statute. Moreover, the remedy fashioned by the trial court was not restricted in the manner urged by defendant in the present case.

In *Cloninger*, plaintiff's bodily injury and uninsured motorist insurance limits were $15,000 per person on a policy issued by defendant National for three vehicles. No underinsurance was written into the policy. Cloninger was a passenger injured as a result of an accident on November 20, 1981. $16,000 was the limit of the at-fault driver's insurance coverage and this amount was paid to Cloninger. Cloninger's injuries exceeded $16,000. Upon National's refusal to cover damages in excess of the $16,000 that he had recovered, Cloninger brought suit for a judicial declaration that defendant's notice to policyholders "offering" underinsurance was insufficient under *Tucker*. Therefore, underinsurance should be implied by law for each of the three vehicles insured. The trial court agreed that National's notice was insufficient and ordered National to submit premium quotations for each optional coverage to plaintiff's insured. National refused to comply with the order, and as a consequence the court held that underinsured-motorist coverage was implied by law up to

$250,000—the maximum coverage offered in the otherwise deficient notice. Defendant appealed. The appellate court affirmed, and National pursued its cause to the Illinois Supreme Court. Although defendant there argued, *inter alia*, that the trial court erred in reforming the parties' contract, the court specifically declined on grounds of waiver to address the issue of the *amount* of underinsured coverage that should have been implied into the policy there in question. The supreme court ruled only that the defendants did not make a *proper* offer of underinsurance pursuant to *Tucker* and the test set forth in *Hastings* and, on that basis, affirmed the trial court's judgment.

If, as defendant posits in the present case, the statutory definition of an "underinsured motor vehicle" is to be interpreted so as to limit the amount of underinsured-motorist coverage that may be implied at law, then the at-fault driver in *Cloninger* was no more "underinsured" than was Hoskinson here, since both at-fault drivers carried more bodily injury liability insurance than the injured insured drivers carried in bodily injury/uninsured-motorist coverage. Thus, accepting defendant's argument, Cloninger's suit was no more viable than plaintiff's here. The trial court's declaration in *Cloninger* that the maximum underinsurance implied by law was equal to the maximum offered in defendant's notice, rather than $15,000, is consistent with our decision today, which rejects the insurer's position in this case. Although the issue before us today was waived by the insurer in *Cloninger*, as indicated above, we do not believe that the statute at issue was enacted to function as a shield to the errant insurer clever enough to discover and argue the point so as to preserve it on appeal.

In this case, plaintiff's amended complaint alleges that, had defendant made a proper offer of underinsured-motorist coverage, the named insured would have elected such coverage in amounts of $100,000 per person/$300,000 per occurrence. Defendant urges that this after-the-fact election allegation is legally without relevance. We tend to agree that legal significance does not attach to the amount of coverage Mrs. Logsdon *would have* purchased, had an offer of underinsurance been made. Plaintiff's after-the-fact-allegation is an unworkable basis for establishing an appropriate underinsurance limit. It would be difficult, if not impossible, to prove.

Plaintiff suggests several alternatives for ascertaining the maximum amount of underinsurance coverage to be implied, one of which is to allow the insured an option to reform the policy after a loss up to the maximum bodily injury coverage offered by the insurer for the last renewal period prior to the injury. As noted above, tacit support

for this alternative appears in the *Cloninger* decision.

It is unclear at this stage of the pleadings and proofs whether defendant Shelter was offering any underinsured-motorist coverage in April of 1983. Since Shelter by law was required to offer additional uninsured and underinsurance coverage up to the amount of an insured's bodily injury liability limits; and, pursuant to *Tucker*, the offer, to be meaningful, had to include options to increase basic bodily injury insurance, we believe that plaintiff's foregoing proposal represents a workable alternative and is preferable to either open-ended coverage (depending only on the extent of the insured's injuries) or a case-by-case factual determination of appropriate coverage limits.

We hold, therefore, that the limit of underinsured-motorist coverage implied by law in this case is equal to the maximum amount of bodily injury liability coverage being offered by Shelter on April 6, 1983. We recognize that this remedy may result in a substantially greater opportunity for the insured than might have resulted had a proper offer been made to the insured in April of 1983. Nonetheless, this consequence is consistent with the language and spirit of the Insurance Code's remedy section.

■ Finally, it is apparent from the trial court's written judgment that plaintiff's count alleging a violation of the Consumer Fraud and Deceptive Business Practices Act was dismissed for the same reason as the count alleging a violation of the Insurance Code—*i.e.*, that the amount of underinsurance coverage implied by law was less than the amount plaintiff recovered from the at-fault driver. Based on our holding that the remedy available to Scott was not limited by the level of the insured's uninsured-motorist coverage at the time of the accident, we hereby reinstate both of plaintiff's causes of action and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SCOTT and STOUDER, JJ., concur.