EDWARD K. FUOSS, Plaintiff-Appellant, v. AUTO OWNERS (MUTUAL) INSURANCE COMPANY *et al.*, Defendants-Appellees.

Fifth District    No. 5—85—0198

Opinion filed September 30, 1986.—Rehearing denied November 7, 1986.

W. Loren Thomson, of Bloomington, for appellant.

Timothy S. Richards, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Auto Owners (Mutual) Insurance Company.

Sanford Goldstein and Renee Murphy Oswald, both of Rosenberg, Weiss, Goffstein, Kraus & Seigel, of St. Louis, Missouri, for appellee Van's Insurance Agency, Inc.

JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals two summary judgments entered in favor of defendant Auto Owners (Mutual) Insurance Company (Auto Owners), and defendant Van's Insurance Agency, Inc. (Van's). These judgments concluded plaintiff's action for damages for personal injuries he had suffered as a result of an automobile collision with Toni Kerr in rural Champaign County. Plaintiff's complaint was in two counts but was later amended to add a third count. Count I was against Toni Kerr. That count was subsequently settled for $100,000, the maximum amount of bodily injury insurance coverage that was afforded by the policy pertaining to the car driven by Kerr. Count II of plaintiff's complaint was a declaratory judgment action directed at Auto Owners. It charged that plaintiff was damaged by reason of not having underinsurance coverage under a policy of automobile liability insurance issued to him by Auto Owners and that this omission stemmed from the failure by Auto Owners to comply with a statutory requirement to notify plaintiff of the availability of underinsured-motorist coverage. More specifically, in count II plaintiff alleged he was injured in the collision with Kerr, Kerr had auto liability policy limits of $100,000, and plaintiff's damages would far exceed $100,000. It further alleged that a statute in force (Ill. Rev. Stat. 1981, ch. 73, par. 755a–2), provided:

> "(1) Required offer of additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in State with respect to any motor vehicle registered or principally garaged in this State unless uninsured motorist coverage as required in Section 143a of this Act is offered in an amount up to the insured's bodily injury liability limits.
> ***

(3) Required offer of underinsured motorist coverage. Any offer made under subsection (1) of this Section shall also include an offer of underinsured motorist coverage. For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident."

Count II then asserted that no offer of underinsured coverage had ever been made to plaintiff and that as a direct result of the failure of Auto Owners to make such offer the plaintiff would be limited to his recovery of damages for his injuries to the $100,000 from the Kerr policy although his damages will far exceed $100,000. Count II then charged that the conduct of Auto Owners was wilful, and it concluded with a prayer, first, for a judgment declaring that Auto Owners violated the cited statute in that no offer of underinsured-motorist coverage had been made and that plaintiff was entitled to an offer of underinsured-motorist coverage on his insurance policy to include limits in an amount sufficient to cover his damages and, second, for a judgment for punitive damages for the wilful failure or refusal to offer the underinsured-motorist coverage as required by the statute.

As a response to plaintiff's complaint against it, Auto Owners filed a motion for summary judgment in which it asserted that the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 613 *et seq.*), prohibited it from selling plaintiff underinsured-motorist coverage in excess of $15,000 for each person and $30,000 for each occurrence. The basis for this assertion by Auto Owners was sections 143a—2(3) and (4) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, pars. 755a—2(3), (4)). In subsection (3) it is provided in part:

"The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."

In subsection (4) it is provided in part that "[t]he named insured may elect to purchase limits of underinsured motorist coverage in an amount up to the uninsured motorist coverage on the insured vehicle or

may reject the offer of underinsured motorist coverage." It was also pointed out by Auto Owners that plaintiff's policy had been issued with bodily injury liability coverage limits of $25,000 for each person and $50,000 for each occurrence and uninsured-motorist coverage in the amount of $15,000 for each person and $30,000 for each occurrence. Auto Owners then reasoned that, since plaintiff had uninsured-motorist coverage of $15,000/$30,000 and had already received $100,000 from Kerr's insurer, if it had offered plaintiff underinsured motorist coverage it would have been limited in amount to $15,000/$30,000 by subsection (4). Since that amount is far below that already received by plaintiff from Kerr, the offset provision of subsection (3) would render ineffective plaintiff's claim under the underinsured-motorist provision of the statute. Auto Owners' motion was supported by an affidavit.

Plaintiff filed an answer to Auto Owners' motion for summary judgment and contemporaneously filed his own motion for summary judgment supported by his affidavit. He asserted that he had never been told of or offered underinsured-motorist coverage as mandated by the statute and stated:

> "If I had been aware of the existence and the availability of underinsured motorist coverage, I would have purchased and [sic] amount of underinsured motorist coverage that would have been sufficient to cover my loss herein."

Plaintiff was granted leave to add a count III to his complaint (designated as count II in the record) by adding as a defendant Van's Insurance Agency, Inc. This count sounded in negligence and reiterated the coverage shortcomings and damages-in-excess-of-coverage allegations contained in count II directed at Auto Owners. It further alleged that Van's was an agent for Auto Owners and had sold plaintiff the policy in question without any underinsured-motorist coverage and, despite the statutory directive, had not offered underinsured-motorist coverage to him. Count III asserted that Van's was under a duty to advise plaintiff and to offer and make him aware of underinsured-motorist coverage and that it was negligent in not so advising him. As a result of Van's alleged negligence, plaintiff prayed for judgment in excess of $15,000.

Auto Owners subsequently moved the court to reconsider its order denying its motion for summary judgment. As the reason for its motion for reconsideration, Auto Owners stated that, after the order denying its motion for summary judgment had been entered, the case of *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956, had been decided. The *Tucker* case held that, because of a deficient notice of the availability of underinsurance coverage, there had been no compliance with section 143a—2 (Ill. Rev. Stat. 1983, ch.

73, par. 755a—2). As a consequence of the failure to comply properly, the court in *Tucker* implied underinsured-motorist coverage in the amount of the policyholder's uninsured-motorist coverage. Auto Owners then contended that since the plaintiff's uninsured-motorist coverage in his policy was far less than he had already recovered from Kerr, the implication of underinsured-motorist coverage for plaintiff's policy would be a useless act.

Van's filed its own motion for summary judgment as to the count of the complaint directed against it, also relying on *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956.

The trial court granted reconsideration to Auto Owners and, in express reliance upon the *Tucker* case, granted summary judgment. In a separate disposition, the court also granted Van's motion for summary judgment. These judgments are the subject of plaintiff's appeal. The plaintiff did not appeal the earlier denial of his own motion for summary judgment.

Plaintiff argues on appeal that it was improper for the court to enter summary judgment in favor of the defendants because a factual question was created when he stated in his pleadings and affidavit that no offer of underinsured-motorist coverage was made to him and that if it had been made he would have purchased liability and underinsured coverage in an amount sufficient to compensate him for his damages. The plaintiff further contends that the case of *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d, 465 N.E.2d 956, relied upon by defendants and the trial court, is not controlling of his case because no offer of underinsurance coverage was made to him at all. Defendant Auto Owners admitted in an answer to interrogatories that they sell liability and underinsured-motorist coverage in amounts up to $1 million. If defendants had complied with the statute, plaintiff says, he would have been permitted to raise his liability and underinsured limits so as to be adequately covered for his damages. The fact that the *Tucker* case fixed the amount of underinsurance coverage at the amount of the public liability coverage of the policy involved there, $100,000, would not serve as an impediment to plaintiff's claim since he would have, had a proper offer been made, selected an amount of bodily injury liability and uninsured-motorist and underinsured-motorist coverage sufficient to cover his damages.

Defendants counter plaintiff's assertions with the argument that section 143a—2 of the Illinois Insurance Code provides that insureds may purchase underinsurance coverage up to the amount of uninsured coverage. At the time of his accident the plaintiff had liability coverage and uninsured coverage in the amount of $15,000/$30,000. Accordingly,

the maximum amount of underinsured-motorist coverage plaintiff could have purchased if it had been offered would have been $15,000/$30,000, the amount of his uninsured-motorist coverage. Since, the defendants assert, plaintiff has already received $100,000 from Kerr, and since section 143a—2(3) grants defendants an offset of the amount plaintiff has already recovered, plaintiff has an amount far in excess of the amount of underinsurance coverage that could be implied to him and his suit is a nullity. Defendant Van's, as an additional defense, advances the contention that since it is an insurance agency only, not an insurer, and therefore does not issue policies, section 143a—2 has no application to it and it cannot be held liable to plaintiff under the asserted cause of action.

Auto Owners concedes, at least implicitly, that no tender of underinsured-motorist coverage was made to the plaintiff, and, for the purpose of this opinion, we will assume that such is the case. That being established, it is apparent that defendant Auto Owners violated section 143a—2 of the Illinois Insurance Code when it last issued or renewed an auto liability insurance policy to the plaintiff.

We initially note that section 143a—2 makes no provision for a private remedy for its violation nor is the availability of a private remedy discussed by the parties. However, without indulging in an extended discussion of the question, we note that our concerns are answered by *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 386, 432 N.E.2d 849, 852, where it is stated that "[t]he public policy underlying certain statutes demands implication of a private remedy to compensate an aggrieved individual belonging to that class of persons whom the statute was designed to protect." The availability of a private remedy for a violation of section 143a—2 was specifically addressed and found to exist in *Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 493 N.E.2d 748.

After the trial court had initially denied defendants' motions for summary judgment, the case of *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d, 456 N.E.2d 956, was decided. It held that where an auto insurer failed to give adequate notice and explanation of the availability of underinsured-motorist coverage to a policyholder so as to enable the policyholder to elect whether to accept or reject such coverage, the underinsured coverage would be read into the insured's policy as a matter of law. The *Tucker* case, without considering the propriety of expanding the amount of underinsured motorist coverage beyond the bodily injury liability limits of the policy, and in keeping with a provision of section 143a—2(4), limited the amount of underinsured-motorist coverage to the amount of uninsured-motorist coverage.

As we have stated, in reliance on that part of the *Tucker* case that limited the amount of underinsured-motorist coverage to be inferred to the amount of the uninsured-motorist coverage, the trial court granted defendants' motions for reconsideration and entered summary judgment for both defendants since the plaintiff had already received from Kerr an amount far in excess of his uninsured-motorist coverage.

Plaintiff now insists that his underinsured-motorist coverage should not be limited by the amount of his bodily injury liability coverage because no offer of underinsured-motorist coverage at all was made to him, that if such offer had been made he would have elected such coverage in an amount sufficient to cover his damages and "would have purchased the maximum amount of automobile liability coverage and underinsured motorist coverage that was available to me." These assertions in plaintiff's pleadings were supported by plaintiff's conclusionary affidavit to the same purport. Plaintiff argues strenuously that his pleading of what course he would have adopted had an offer of underinsured-motorist coverage been made to him, and his affidavit in support thereof, create a factual question that cannot be resolved upon a motion for summary judgment, thus requiring reversal of the judgments and remand for a trial on the merits.

Plaintiff fortuitously was able to cite as additional authority in strong support of his position the case of *Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 493 N.E.2d 748, decided after the briefs had been submitted and oral argument had in this case.

The facts in the *Logsdon* case are quite similar to those presented here. The plaintiff had been injured in an auto collision. The policy upon the auto driven by plaintiff carried bodily injury limits of $25,000 per person, $50,000 per accident. The auto that collided with plaintiff was covered by a policy that afforded $30,000 bodily injury liability, and that amount had been paid to plaintiff. No offer of underinsurance coverage had been made upon the policy of insurance that covered the auto being driven by plaintiff. He filed suit against the insurer alleging that his damages exceeded $30,000. The remedy plaintiff sought was the implication as a matter of law of underinsured-motorist coverage in an amount sufficient to cover his damages despite the provisions of section 143a—2(4) that would ostensibly limit the amount of that implied coverage to the amount of the uninsured-motorist coverage of the policy upon the auto he had been driving at the time of his injury. The trial court in *Logsdon* granted the insurer's motion to dismiss, apparently on the basis of the amount of underinsurance to be implied, as in the *Tucker* case. On appeal, the appellate court stated the issue before it to be, What is the extent of the remedy available to an insured when

the insurer fails to fulfill its statutory duty to make an adequate offer of underinsured-motorist coverage? The court in *Logsdon* did not feel that the remedy was limited by the *Tucker* case because the amount of insurance inferred there was apparently sufficient to cover the insured's losses and the limitation-of-remedy question had not been discussed by the court. The *Logsdon* court reasoned that to limit the amount of underinsured-motorist coverage to be implied in law to the amount of the existing uninsured-motorist coverage would be effectively to obviate the statutory duty to offer underinsured-motorist coverage with any policy providing minimum coverage for bodily injury. It ultimately held that the remedy should not be limited to the amount of uninsured-motorist coverage of the existing policy, stating:

> "In our opinion, the duty imposed by the legislature to provide adequate information about the additional coverage applies for the benefit of all insured motorists, regardless of the level of an insured's basic liability coverage. Accordingly, we hold that an insurer who violates the requirement that it offer the additional coverage pursuant to section 143a—2 may not seek refuge in any protection afforded by the current statutory language. Rather, when the insurer fails to perform its duty to make a meaningful offer, and certainly when as here no offer at all is made, an appropriate remedy may be fashioned pursuant to section 442 of the Code. That section provides that the policy in question be construed in such fashion that 'the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto.' Ill. Rev. Stat. 1983, ch. 73, par. 1054." (*Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 961-62, 493 N.E.2d 748, 751-52.)

The court then set about fixing a proper remedy for plaintiff, rejecting plaintiff's suggestion made in his amended complaint that, had a proper offer of underinsurance coverage been made, he would have elected such coverage in amounts of $100,000 per person, $300,000 per occurrence.

> "Defendant urges that this after-the-fact election allegation is legally without relevance. We tend to agree that legal significance does not attach to the amount of coverage Mrs. Logsdon *would have* purchased, had an offer of underinsurance been made. Plaintiff's after-the-fact-allegation is an unworkable basis for establishing an appropriate underinsurance limit. It would be difficult, if not impossible, to prove. (Emphasis in original.)

(*Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 963, 493 N.E.2d 748, 753.)

In concluding its opinion, and its selection of the proper remedy to be accorded an aggrieved party, the court in *Logsdon* stated:

> "We hold, therefore, that the limit of underinsured-motorist coverage implied by law in this case is equal to the maximum amount of bodily injury liability coverage being offered by Shelter on April 6, 1983. We recognize that this remedy may result in a substantially greater opportunity for the insured than might have resulted had a proper offer been made to the insured in April of 1983. Nonetheless, this consequence is consistent with the language and spirit of the Insurance Code's remedy section." (*Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 964, 493 N.E.2d 748, 753.)

▆▆ We certainly agree with both *Tucker* and *Logsdon* that when an insurer violates its statutory duty to give an adequate notice of the availability of underinsured-motorist coverage upon the issuance or renewal of a policy, underinsured-motorist coverage must be implied as part of the policy terms. Having found that plaintiff was entitled to some sort of relief, the *Logsdon* court was obviously troubled by the manner in which that relief should be measured. It decided rather quickly that the amount of underinsured-motorist coverage to be implied into his liability policy should not be limited to the amount of the uninsured-motorist coverage, as in the *Tucker* case. But even so, it was obviously troubled by the fact that the approach it was taking to fashioning a remedy would permit an aggrieved party to rewrite his insurance contract to fit his needs *after* a loss had occurred, a procedure completely inimical to the concept of insurance and the laws of contract. The *Logsdon* court declined to give the plaintiff the coverage he had asked:

> "Plaintiff's after-the-fact-allegation [that he would have elected underinsured-motorist coverage of $100,000/$300,000] is an unworkable basis for establishing an appropriate underinsurance limit. It would be difficult, if not impossible, to prove." (*Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 963, 493 N.E.2d 748, 753.)

The court settled upon another remedy that had been suggested by the plaintiff, one that would allow the insured an option to reform his policy after a loss up to the maximum bodily injury coverage offered by the insurer for the last renewal period prior to the injury. This "limitation" was found preferable to either open-ended coverage that would depend only upon the extent of the insured's injuries (the remedy

sought by plaintiff in the case under consideration), or a case-by-case factual determination of appropriate coverage limits.

The *Logsdon* court was apparently unclear as to the amount of bodily injury coverage offered by the insurer; at any rate, it was not discussed. However, in view of the reality that bodily injury liability limits of $500,000/$1,000,000 are rather common coverages extended by insurers, the limitation placed upon the remedy ultimately settled upon in *Logsdon* is largely illusory.

■ Turning to the case under consideration, we must, like the court in *Logsdon*, admit to some uneasiness from plaintiff's bold assertion, made entirely after the occurrence, that if he had been offered underinsurance coverage by defendant he would have elected such coverage in an amount sufficient to cover his damages, an amount far in excess of the bodily injury liability insurance coverage he had already purchased for his existing policy. There is a strong impulse to regard plaintiff's assertion as a fiction advanced for the purpose of his suit. In any event, by his post-occurrence assertion plaintiff places himself in a position that enables him to claim for himself an amount of coverage for his own injuries that he was unwilling to extend to others whom he might injure by his own negligence or wilful misconduct. Plaintiff's stance whereby he claims protection for himself while he withholds the same protection from others is repugnant to our system of justice. As a minimum, he must accept as sufficient for himself that which he extends to others. Public policy can tolerate no less. For these reasons we believe the remedy afforded by the *Tucker* case to be the one that is most in accord with the statutory scheme and the policy of the law.

Accordingly, we hold that the amount of underinsured-motorist coverage to be implied as a matter of law for plaintiff's policy is the limits of the bodily injury liability portions of his existing policy. Since plaintiff has already recovered from Kerr an amount in excess of the coverage we find he is entitled to have implied, the implication would be a nullity, and both summary judgments entered by the trial court should be affirmed.

Affirmed.

HARRISON and WELCH, JJ., concur.