LEE T. BLAKE, Plaintiff-Appellant and Cross-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee and Cross-Appellant.

First District (1st Division)   No. 87—2246

Opinion filed April 11, 1988.

Raymond P. Concannon and Michael P. Concannon, both of Raymond P. Concannon, Ltd., of Chicago, for appellant.

James J. Hoffnagle and Frank C. Stevens, both of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from a bench trial to determine the limits of appellant Lee Blake's underinsured motorist insurance coverage under a policy, issued by appellee State Farm Mutual Automobile Insurance Company (State Farm), which did not by its terms include underinsured motorist coverage. Blake also appeals the dismissal of class action allegations and a claim alleging violation of Illinois consumer fraud statutes. For the reasons stated below, judgment is affirmed.

Three issues are presented on appeal. The first issue is whether State Farm's failure adequately to offer increased underinsured motorist coverage to Blake and other "new business" policyholders, through the acknowledgement/rejection form combined with an agent's verbal explanations, constitutes similarity of facts or law sufficient to sustain a class action. The second is whether the amount of underinsured coverage implied by law for Blake after the accident was properly limited to the amount of Blake's bodily injury liability under the policy. The third issue is whether State Farm's failure adequately to offer increased underinsured motorist coverage to Blake as a "new business" policyholder violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 et seq.).

On September 5, 1980, State Farm issued an automobile insurance policy to Lee T. Blake. The policy provided 50/100 bodily injury liability coverage ($50,000 per person or $100,000 per occurrence), 15/30 uninsured motorist coverage, and no underinsured motorist coverage. After face-to-face negotiations with State Farm agent Diane Trennert, Blake signed an application for insurance, and an "acknowledgement/rejection" form rejecting increased limits on the uninsured and underinsured motorist coverages.

Before the policy was renewed for the first time, Blake was involved in a collision with an underinsured motorist, one whose liability insurance was insufficient to cover the injuries suffered by the other motorist, in this case, Blake. Blake claimed that he carried no underinsured motorist coverage because State Farm failed adequately to offer the increased coverage. State Farm responded that it had com-

plied with section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2), which requires insurers to offer the increased uninsured and underinsured coverage when offering other automobile insurance.

Blake brought suit against State Farm individually and on behalf of the class of all "new business" policyholders, alleging violations of the Insurance Code, Consumer Fraud Act, and Uniform Deceptive Trade Practices Act. Before trial, the court dismissed Blake's class action allegations on a motion by State Farm. The individual claims proceeded to a bench trial, where the court found that the face-to-face negotiations and the acknowledgement/rejection form were insufficient to constitute an adequate offer. The trial court implied underinsured coverage to the limits of Blake's bodily injury liability coverage and found in favor of State Farm on the consumer fraud allegations. After trial, Blake filed timely notice of appeal, and State Farm cross-appealed.

■ We initially address whether the trial court correctly dismissed the class action allegations made by Blake. Blake contends that State Farm's use of the inadequate "acknowledgement/rejection" form for "new business" provided a sufficient basis for the similarity of law or fact required for class actions by the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—801(2)). Receipt of the form and its failure to comply with statutory requirements, Blake contends, comprise the common predominant question of law upon which the class action allegations are based. It is well settled that where a predominant question of law or fact exists, requirement of individual proofs, or multiple claims requiring separate adjudication, do not bar class actions. *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 384 N.E.2d 316; *Hoover v. May Department Stores Co.* (1978), 60 Ill. App. 3d 106, 378 N.E.2d 762, *rev'd on other grounds* (1979), 77 Ill. 2d 93, 395 N.E.2d 541.

■ Case law suggests, however, that to establish a plaintiff class, the action of the defendant must cause some injury to everyone, absent some intervening factor. In *Goetz v. Village of Hoffman Estates* (1978), 62 Ill. App. 3d 233, 378 N.E.2d 1276, for example, the court ruled that each plaintiff was separate and distinct, requiring individual proofs of causation. In so holding, the court cited cases where the plaintiff class had been injured economically by the defendant's action and did not require, as in the instant case, an intervening action to establish the injury (see *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815, *appeal denied* (1977), 66 Ill. 2d 629; *DePhillips v. Mortgage Associates, Inc.* (1972), 8 Ill. App. 3d 759,

291 N.E.2d 329; see also *Barton Chemical Corp. v. Hertz Corp.* (1977), 52 Ill. App. 3d 214, 367 N.E.2d 398, *appeal denied* (1977), 66 Ill. 2d 638 (harm to named plaintiff did not necessarily imply harm to other members of proposed class)).

■ Blake inaccurately characterizes the instant case as one that turns on a pervasive question of law common to all class members. In the cases cited by Blake, the common question of law or fact was the basis for the law suit. The defendants' actions harmed all class members, although the harm to the individual class members may have varied somewhat by degree or circumstances in which it arose. In contrast, no commonality among members of the proposed class arose from the transaction of September 5, 1980, between Mr. and Mrs. Blake and State Farm's agent Ms. Trennert, and proof of Blake's claim would not give other proposed class members a right to recover. The instant case arose from an auto accident between Blake and an unnamed third party, and the allegations of improper offer stem from individual negotiations with State Farm's agent. The circumstances of the case show predominant individual issues despite an incidental question of law that may extend to other insureds.

Further, an intervening factor, the automobile accident, made Blake's injury apparent. Without intervening factors such as auto accidents, or other incidents that give rise to an insurance claim, the possible harm to other class members stemming from the inadequate acknowledgement/rejection form is at best speculative. Therefore, because the instant case arose from negotiations between Blake and State Farm, and Blake's damage was more directly the result of the accident here, it cannot be said that the trial court abused its discretion, and dismissal of the class allegations is affirmed.

■ We next examine whether the amount of increased coverage to be implied by law was properly limited to the amount of bodily injury liability coverage that Blake actually had or, as Blake contends, should have been the maximum amount of bodily injury liability coverage that Blake could potentially have bought at the time he purchased the insurance. The former was implied by the trial court, which found that State Farm failed properly to offer the increased underinsured motorist coverage. Case law indicates that the trial court's choice was not reversible error.

Blake relies on *Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 493 N.E.2d 748, *appeal denied* (1986), 112 Ill. 2d 577, which presented facts similar to the instant case and held that the amount of increased coverage implied by law should equal the maximum amount of bodily injury liability coverage that the insured

could have been offered at the time the insurance was offered. (143 Ill. App. 3d at 964.) The *Logsdon* court reasoned, and Blake urges, that section 143a–2 of the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755a–2) was fashioned as a source of consumer protection, to ensure that insureds receive information adequate to make an informed decision about coverage. (*Logsdon*, 143 Ill. App. 3d at 961.) Accordingly, the *Logsdon* court implied the maximum amount offered as a suitable remedy where the insurer failed to perform its statutory duty to offer increased underinsured motorist coverage.

We are more persuaded, however, by *Fuoss v. Auto Owners Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268, also with facts similar to the instant case, in which the Illinois Supreme Court addressed the issue of determining the amount of increased coverage implied by law. The court's ultimate decision stemmed from the language of section 143a–2(1), which states that the insured may elect to purchase underinsured motorist coverage up to the amount of the uninsured motorist coverage on the insured vehicle, and section 143a–2(4), which states that uninsured motorist coverage may be purchased up to the amount of insured's bodily injury liability limits. Because the statutory language set coverage limits according to the specific coverage of the insured, or the specific insured vehicle, the court concluded that the implied amount should equal either the amount of bodily injury liability coverage actually retained by the insured, or the amount of uninsured motorist coverage actually retained on the insured's vehicle. 118 Ill. 2d at 433-34.

*Fuoss* did not decide which limit to apply, but intimated that both should be considered. *Fuoss* did not mention *Logsdon*, but apparently rejected *Logsdon's* reasoning. *Fuoss* makes clear, however, that the trial court's decision in the instant case to limit the increased coverage to the amount of bodily injury liability was not reversible error. Therefore, the trial court's decision to not follow *Logsdon* and to limit Blake's increased coverage to the limit of the bodily injury liability limits is affirmed.

■ Finally, we address whether the trial court erred in dismissing Blake's allegations of violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and section 312 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 311 *et seq.*). Blake argues that State Farm's use of the inadequate acknowledgement/rejection form, and the insufficient explanations by its agent Ms. Trennert, merited a favorable judgment under section 2 of the Consumer Fraud Act. Closer scrutiny of the law and Blake's argument, however,

shows that such is not the case.

The Consumer Fraud Act is not intended to provide a redundant remedy to redress a private wrong. (*Grass v. Homann* (1985), 130 Ill. App. 3d 874, 880, 474 N.E.2d 711, *appeal denied* (1985), 106 Ill. 2d 554; *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 586, 447 N.E.2d 1007, *appeal denied* (1983), 96 Ill. 2d 539; *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 216, 438 N.E.2d 1247, *appeal denied* (1982), 92 Ill. 2d 568.) In each of the above cases, the plaintiff brought action to redress an alleged wrong that arose in the course of one-to-one transactions between plaintiff and defendant. In each case, the court held that the Consumer Fraud Act was not intended to extend to wrongs committed in the context of private transactions, but rather addressed wrongs committed in the course of business or trade.

■ In the instant case, Blake attacks the entire notification procedure used by State Farm to inform new policyholders that underinsured motorist coverage was available. Accordingly, it becomes clear that there might be a sufficient showing of course of business or trade to state a claim under the Consumer Fraud Act if the case were sustainable as a class action. The trial court, however, properly dismissed the class action allegations, as discussed above. We therefore affirm the trial court's proper dismissal of the claim for violation of the Consumer Fraud Act.

Two minor issues remain, concerning the adequacy of the State Farm acknowledgement/rejection form and the credibility of the trial testimony of Blake's wife, Artelia. The parties argued throughout the appeal whether the acknowledgement/rejection form was adequate. The trial court ruled that State Farm's acknowledgement/rejection form was inadequate, however, and this finding is not contrary to the manifest weight of the evidence. A different decision would not cast the weight in favor of reversal with respect to any of the issues on appeal. With respect to the issue of the limitation of the increased coverage, both sides accepted the finding of the trial court that the form was inadequate and merely argued the result of the finding. Because the class action allegations and Consumer Fraud allegations were properly dismissed without regard to fault on the part of State Farm, the form is irrelevant with respect to these. Artelia Blake's testimony was relevant to whether State Farm's offer was adequate. The trial court stated that the inconsistencies in her testimony did not require finding her incredible, and the court relied on other testimony to make its finding of inadequacy.

In summary, the trial court's findings and rulings should be af-

firmed with respect to all issues. The character of the case indicates that it is an individual claim; damage to other proposed class members is speculative at best. The trial court's limitation of the increased coverage to the limits of bodily injury liability is consistent with the supreme court's reading of the Insurance Code in *Fuoss v. Auto Owners Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268. The consumer fraud allegations were properly stricken, since the intent of the Consumer Fraud Act was to redress public, and not private, wrongs. In the instant case, where the class allegations were properly dismissed, the consumer fraud claims were also properly dismissed. It is the decision of this court that the trial court committed no reversible error.

Affirmed.

BUCKLEY and QUINLAN, JJ., concur.