GLORIA LINTON, Plaintiff-Appellee, v. CHICAGO MOTOR CLUB, INC.,[1] Defendant-Appellant.

First District (2nd Division) No. 1—88—3614

Opinion filed December 19, 1989.

[1]Defendant in this case is, more properly, Chicago Motor Club Insurance Co.; it was incorrectly sued as "Chicago Motor Club, Inc."

Christine Smith and John O'Connor, both of Chicago, for appellant.

Spencer W. Schwartz & Associates, of Chicago (Paul Armstrong, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Gloria Linton sought to reform an insurance policy issued to her by Chicago Motor Club Insurance Co. (defendant), which was authorized to write automobile insurance policies in Illinois. Cross-motions for summary judgment were filed by each party. Plaintiff's motion was allowed, and defendant's motion was denied. On appeal, defendant claims error in the circuit court's reformation of the insurance policy, effected by increasing uninsured motorist and underinsured motorist benefits.

Around July 14, 1983, defendant's agent, Herb Scally, gave a written quotation for automobile insurance coverage to plaintiff which included, *inter alia*, two alternative options: bodily injury liability limits of $15,000 each person and $30,000 each occurrence ($15,000/$30,000), at a premium of $70, with uninsured motorist protection limits of $15,000/$30,000 at an additional premium; or bodily injury liability limits of $25,000/$50,000, at a premium of $85, with uninsured motorist protection limits of $15,000/$30,000 (at the same additional premium quoted in the first option). The written quotation also provided designated spaces for the limits and corresponding premium for underinsured motorist protection, which were left blank un-

der both of the options offered to plaintiff. Plaintiff elected coverage with $15,000/$30,000 bodily injury liability limits and was issued a policy, effective from July 14, 1983, to January 1, 1984, which included bodily injury liability, uninsured motorist, and underinsured motorist limits of $15,000/$30,000.

On July 22, 1983, plaintiff was seriously injured in an automobile accident resulting in damages which exceeded the $15,000 bodily injury limits available under the insurance policy of the at-fault driver. After exhausting the insurance coverage of the at-fault driver in a settlement, plaintiff demanded from defendant increased underinsured motorist benefits in the amount of $25,000/$50,000, asserting Scally's quotation to her violated section 143a—2 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). Defendant refused. This action followed, seeking to reform the policy to reflect uninsured motorist and underinsured motorist limits of $25,000 each person/$50,000 each occurrence.

■ Plaintiff's motion for summary judgment was supported by an affidavit in which she averred, in part:

"If I had been aware that the increased coverage quoted would also give me the opportunity to purchase increased coverage to me under my uninsured motorist and underinsured motorist coverage at a comparable increase in rates, I would have elected to purchase the increased liability, uninsured and underinsured motorist coverage from Chicago Motor Club."

The circuit court struck that portion of plaintiff's affidavit in which she claimed she would have elected to purchase increased coverage if offered. The court then found defendant's alternative written quotation of bodily injury limits of $25,000/$50,000 with uninsured motorist limits of $15,000/$30,000 constituted a "faulty offer" to plaintiff under section 143a—2 of the Code. Concluding that defendant's failure to offer additional uninsured motorist coverage with limits of $25,000/$50,000 violated the statute, the circuit court granted plaintiff's, and denied defendant's, motion for summary judgment. The court then reformed the insurance policy to reflect increased limits of $25,000/$50,000 uninsured motorist and underinsurance coverage. Defendant appeals. Whether defendant's offer of additional uninsured/underinsured motorist coverage under section 143a—2 of the Code was faulty, or not, we conclude that the circuit court erred in reforming the insurance policy to reflect increased uninsured/underinsured motorist coverage limits of $25,000/$50,000, for reasons which follow.

Plaintiff argues that because defendant failed to offer uninsured

motorist coverage[2] in an amount equal to the offer of bodily injury liability coverage ($25,000/$50,000), the policy must be reformed to reflect such additional coverage in that increased amount. Defendant contends that the amount of bodily injury liability coverage actually retained by an insured determines the maximum amount of uninsured (and underinsured) motorist coverage available; it concludes that, because plaintiff selected bodily injury liability limits of $15,000/$30,000 and rejected increased limits of $25,000/$50,000, she is entitled only to $15,000/$30,000 of uninsured motorist coverage.

Plaintiff relies on *Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 493 N.E.2d 748, to support the reformation of the policy as ordered here by the circuit court. In *Logsdon,* the Third District Appellate Court attempted to determine the amount of increased coverage to be implied by law where an insurer failed to offer underinsured motorist coverage as required by the Code. The insured in that case sought the implication as a matter of law of underinsured motorist coverage in an amount sufficient to fully cover his damages or, alternatively, reformation of the policy up to the maximum bodily injury coverage offered by the insurer for the last renewal period prior to the injury. The insurer, on the other hand, sought to limit the underinsured motorist coverage to be implied by law to the amount of the insured's uninsured motorist coverage. Preferring to avoid an unlimited or "open-ended" remedy, the court held that the amount of increased coverage implied by law should equal the maximum amount of bodily injury liability limits available from the insurer at the time the offer was made. (*Logsdon,* 143 Ill. App. 3d at 964.) The court found it important that section 143a—2 was intended to protect consumers, and considered the maximum amount of coverage available from an insurer to be an appropriate remedy where the insurer failed to make a sufficient offer under the statute. *Logsdon,* 143 Ill. App. 3d at 961, 964.

The remedy adopted by the *Logsdon* court was rejected four months later by the fifth district in *Fuoss v. Auto Owners (Mutual)*

---

[2]In her brief, plaintiff also argues that defendant failed to offer underinsured motorist coverage. Under section 143a—2(5) (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(5)), defendant was no longer required to offer such coverage in policies such as that of plaintiff issued after July 1, 1983. For those policies, defendant is required to *include* underinsured motorist coverage in an amount at least equal to the total amount of uninsured motorist coverage provided in the policy (where the uninsured motorist coverage exceeds $15,000/$30,000). See *Eipert v. State Farm Mutual Automobile Insurance Co.* (1989), 189 Ill. App. 3d 630, 545 N.E.2d 497; *Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 600-01, 525 N.E.2d 1076.

*Insurance Co.* (1986), 148 Ill. App. 3d 526, 499 N.E.2d 539, *aff'd* (1987), 118 Ill. 2d 430, 516 N.E.2d 268. The appellate court in *Fuoss* reformed an insurance policy and implied underinsured motorist coverage in an amount equal to the bodily injury liability limits selected by the insured. Noting that bodily injury liability limits of $500,000/$1,000,000 commonly were available from insurers, it found the "limitation" on the remedy selected by the *Logsdon* court to be illusory. 148 Ill. App. 3d at 535.

This conflict between appellate court districts was resolved implicitly by our supreme court in its review of *Fuoss*. (*Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268 (*Fuoss*).) In *Fuoss*, the insured sought reformation of an insurance policy based on an alleged violation of section 143a—2, namely, the insurer's failure to offer underinsured motor vehicle coverage as part of his policy. The policy he purchased included bodily injury liability limits of $25,000/$50,000, and uninsured motorist insurance of $15,00/$30,000. The insured was injured in an automobile accident and eventually settled with the at-fault driver for $100,000, the maximum amount payable under the at-fault driver's policy. Seeking additional amounts from his own insurer to cover all damages from the accident, the insured sought to reform his policy to include underinsurance. The insured there filed an affidavit similar to plaintiff's affidavit here, to the effect that he would have purchased an amount of underinsured motorist coverage that would have been sufficient to cover his loss if he had known of the existence and the availability of underinsured motorist coverage (118 Ill. 2d at 432), which the court held to be too ambiguous. 118 Ill. 2d at 434.[3]

The supreme court observed (*Fuoss*, 118 Ill. 2d at 434):

> "Should we reform [the insured's] policy in accordance with the Code, we could imply coverage at no more than either $15,000/$30,000 (as the circuit court did)—the amount of his uninsured limits—or $25,000/$50,000 (as the appellate court did)—the amount of his bodily injury liability insurance."

Since the insured's $100,000 settlement was greater than the $15,000 or $25,000 he could collect under either interpretation, the supreme court refused to grant further relief. *Fuoss*, 118 Ill. 2d at 434.

The *Fuoss* case did not decide which limit to apply (uninsured or bodily injury) for determining coverage to be implied by law; it did

---

[3]The circuit court in the instant case correctly struck this portion of plaintiff's affidavit based on *Fuoss*, wherein the supreme court rejected the strikingly similar affidavit. *Fuoss*, 118 Ill. 2d at 434-35.

implicitly reject *Logsdon,* however, since no mention was made of that court's remedy which provided coverage in amounts equal to the maximum bodily injury liability limits available from an insurer. (See *Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 604, 525 N.E.2d 1076.) In determining the amount of increased underinsured motorist coverage to be implied by law in light of *Fuoss,* this court has stated that "the implied amount should equal either the amount of bodily injury liability coverage *actually retained* by the insured, or the amount of uninsured motorist coverage *actually retained* on the insured's vehicle." (Emphasis added.) *Blake v. State Farm Mutual Automobile Insurance Co.* (1988), 168 Ill. App. 3d 918, 923, 523 N.E.2d 85 (*Blake*).

In light of *Fuoss* and *Blake,* the maximum uninsured/underinsured motorist coverage which can be implied by law in this case is $15,000/$30,000, the amount of bodily injury liability coverage actually retained by plaintiff. The insurance policy at issue here already included those limits; the circuit court should not have reformed the policy to provide increased coverage.

Plaintiff's attempted distinctions of *Fuoss* and *Blake* are unpersuasive. Moreover, some of the concerns enunciated in *Fuoss* are relevant here. As in *Fuoss,* allowing the reformation sought by plaintiff in this case "would permit [her] to choose, after the fact, underinsurance [and uninsured motorist] coverage in an amount greater than [she] originally selected for bodily injury liability coverage with the result that [plaintiff] would be providing more protection for [herself] than [she] was originally willing to extend to the general public." (*Fuoss,* 118 Ill. 2d at 435.) Such an outcome would be "repugnant" to the court's sense of justice. *Fuoss,* 118 Ill. 2d at 435.

█ Plaintiff next argues this court can presume that, based upon the legislative history of section 143a–2, the insured would have chosen increased coverage if fully informed of its costs and benefits. Such a presumption, however, is speculative in nature and is proscribed under *Fuoss.* Plaintiff nevertheless suggests that, unlike *Fuoss,* the amount of additional coverage sought here is reasonably ascertainable from the written quotation and does not involve self-serving speculation on plaintiff's part. Whether plaintiff would have chosen increased coverage, particularly since she rejected bodily injury liability insurance in the same amount in which she now seeks protection for herself, remains speculative. Plaintiff's suggestion that she chose the lower bodily injury liability coverage solely because the offer of increased coverage did not have a corresponding offer of increased uninsured motorist limits also must be rejected.

Based on *Fuoss* and its subsequent interpretation in *Blake*, the maximum amount of uninsured/underinsured motorist coverage that could be implied by law was $15,000/$30,000, the amount of bodily injury liability actually retained by plaintiff. Entry of summary judgment for plaintiff, which reformed the insurance policy to reflect increased uninsured/underinsured motorist limits of $25,000/$50,000, was in error and must be reversed.

Reversed.

BILANDIC, P.J., and DiVITO, J., concur.