MARTHA TUCKER, Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant

Fourth District   No. 4—83—0607

Opinion filed June 21, 1984.—Rehearing denied July 30, 1984.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel, of counsel), for appellant.

G. Michael Prall, of Yoder, Yoder, Zanoni, Flynn, Prall & Willard, of Bloomington, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Defendant Country Mutual Insurance Company appeals from a declaratory judgment of the circuit court of McLean County, finding that defendant failed to offer underinsured coverage to its insured in a renewal policy of automobile insurance, as required by section 143a—1 of the Illinois Insurance Code (1979 Ill. Laws 4771) and reading such coverage into plaintiff's policy by operation of law. We affirm.

The only count of plaintiff's complaint before this court upon which a declaratory judgment was entered by the trial court is count V. The allegations of count V and the agreed statement of facts submitted to the trial court by the parties discloses that on October 22, 1980, plaintiff Martha Tucker was injured in an automobile accident sustaining injuries in excess of $20,000. Plaintiff's husband, William Tucker, was the named insured on a policy of insurance issued by the defendant and plaintiff was covered under the policy as a spouse and resident of the same household. Under the policy of insurance, uninsured motorist coverage of $100,000/$300,000 was provided, but the policy did not contain coverage for underinsured protection to pay the difference between plaintiff's total damages and the liability limits of the at-fault driver's insurance policy. The driver of the at-fault vehicle was insured, but the limits of his liability were $15,000 per person, which amount was tendered to plaintiff by State Farm Insurance Company.

The statutory provision at issue provided that, effective March 3, 1980, no policy could be issued or renewed unless an offer of underinsured coverage was made to the insured to provide coverage for the difference between the injured party's damages and the liability limits of the at-fault vehicle. Section 143a—1 provides as follows:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person

arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle *** *unless underinsured motorist coverage is offered in an amount equal to the insured's uninsured motorist coverage limits.*" (Emphasis added.) (1979 Ill. Laws 4771.)

Plaintiff's complaint sought a declaratory judgment that defendant had failed to offer the underinsured motorist protection upon renewal of her insurance policy and that such failure to make the offer required that the coverage be included in the insured's policy by operation of law.

The method devised by defendant to offer underinsurance coverage to policyholders was to include a one-time notice to that effect with the policyholder's notice of renewal. Plaintiff received a notice of the policy renewal in August 1980, along with a letter from defendant advising her of the additional coverage. The notice sent to plaintiff from defendant provided as follows:

"Dear Policyholder:

The Country Companies continually strive to control costs in order to avoid rate increases for our policyholders. We have been able to postpone a rate increase for several months in spite of the continuing impact of high inflation. It has, however, finally become necessary to adjust our rates upward to keep them better in line with costs. The rate increase has been kept to a minimum.

We would like you to be aware that Country Companies now offer underinsured motorist coverage. This coverage provides bodily injury protection for you if you are injured in an accident caused by another driver who does not have adequate liability insurance coverage. If you wish to add this coverage to your personal vehicle policy, please contact your Country Companies agent."

The trial court granted plaintiff's complaint for declaratory relief and implied underinsurance coverage in the policy in limits equal to her uninsured protection. In so doing, the trial court construed the word "offer" in the statute to require that the defendant meet a four-part test adopted in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849. The trial court concluded that since no meaningful offer of underinsurance coverage had been made by the defendant, underinsurance coverage would be included in the policy in an amount equal to the limits for uninsured coverage.

The deciding issue we consider is whether the defendant made a

proper offer of underinsurance coverage to its insured as required by section 143a—1 of the Illinois Insurance Code. This issue is one of first impression in the reviewing courts of this State.

Defendant takes the position that it was not the legislature's intention in using the word "offer" to require insurers to make a formal contractual offer to insureds of underinsurance protection and that "offer" was not intended to mean anything other than that the insurer should make such coverage available and offer it in a nonspecific, colloquial sense. While agreeing that the word "offer" is ambiguous, defendant argues that "offer" could not have been used in its legal sense as a requirement that the insured receive a detailed proposal to confer upon the insured a power of acceptance. Such a construction, argues defendant, would remove the underwriting function from insurers and alter dramatically the practice in the insurance industry, where it is generally understood that acceptance by the insurer is as essential as acceptance by the insured.

Plaintiff replies that when a statute uses a word having a well-known legal significance, courts will, in the absence of any expression to the contrary, assume that the legislature used the word in its legal sense. (*People ex rel. Mayfield v. City of Springfield* (1959), 16 Ill. 2d 609, 158 N.E.2d 582.) An offer, under plaintiff's interpretation, must be certain and unambiguous and confer upon the offeree a power of acceptance to form a contract. (See *McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 411 N.E.2d 936.) Plaintiff argues in the alternative that the term "offer," if it was not meant to mean a legal, contractual offer, must be construed to mean a meaningful, intelligent offer to implement the legislative purpose of section 143a—1.

■ We begin with the cardinal rule of statutory construction that courts should always interpret a statute with the foremost objective of arriving at the intention of the legislature. (*People ex rel. Mayfield v. City of Springfield* (1959), 16 Ill. 2d 609.) In deriving this intention, consideration must be given to the entire statute, its nature, object, and the consequences which would result from construing it one way or another. (*Carrigan v. Illinois Liquor Control Com.* (1960), 19 Ill. 2d 230, 166 N.E.2d 574.) Although the question is not entirely free from doubt, we interpret section 143a—1 to require that insurers offer the optional coverage in definite and specific terms in renewal policies and original policies so as to make effective, what is to us, the insured's clear power of acceptance of the additional coverage.

■ We do not find that the offer has to be in the nature of a legal offer, but we do conclude that specific information must be communicated to the insured to make the offer meaningful. This conclu-

sion is supported by the generally understood meaning of the word "offer" as requiring a definite statement of terms (*McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 411 N.E.2d 936), legislative debate on the nature of an offer, and by other language in the added section which provides, in identical language, that uninsured motorist coverage shall also be offered and goes on to state that "[i]n those cases where the insured *has failed to elect* uninsured motorist coverage in excess of the mandatory limits set forth in Section 7—203 of The Illinois Vehicle Code, the insurer need not offer in any renewal or supplemental policy coverage in excess of that required in Section 7—203 of The Illinois Vehicle Code." (Emphasis added.) (1979 Ill. Laws 4771.) By stating that both uninsured and underinsurance coverage shall be offered and then noting that this offer creates a right of election, we think it clear that it is the insured who has the power to decide whether the additional coverages, both uninsured and underinsurance, shall be accepted. To confer upon the insured a right of election without providing sufficient information to make an intelligent decision is, we believe, contrary to the purpose of section 143a—1.

Legislative debate upon identical language in a subsequent bill makes this purpose clear. When section 143a—1 was repealed by Public Act 81—1426 (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2), which added a more comprehensive provision for offers of uninsured and underinsurance coverage, Public Act 81—1426 retained the same language that insurance companies shall offer specified amounts of underinsurance coverage. In commenting upon this same language that insurers shall offer underinsurance coverage, Senator Berman commented that "what we're saying is that it is going to be up to the insured *upon being advised as to what is available to him to decide what he wants to buy* and what he wants to pay for *** and I'm sure that the department [of Insurance] will require them to in the policy forms, *to spell out what they are offering, what is being paid for and what the coverage is.* Without this kind of clarifying language, you're going to find *some companies* charging more for coverage that the insured doesn't want *** or on the other hand, *not offering what the insured is willing to pay for.*" (Emphasis added.) (Senate debates, June 27, 1980, at 73.) Giving the insured the power to accept this additional coverage was the manifest purpose of section 143a—1, and to construe the word "offer" to mean simply making it available in a general sense, without providing specific information of the terms of this coverage would defeat the goal of the statute. Subsequent amendments to the same section make clear the legislature's perception that

this is an important coverage since section 143a—2 of the Illinois Insurance Code now requires that underinsurance coverage be included in all policies issued or renewed after July 1, 1983. Ill. Rev. Stat. 1983, ch. 73, par. 755a—2.

■ Defendant argues against any construction of the word "offer" to require that the insurer give the insured the power to accept the additional coverage. Defendant suggests that the statute should not be construed to effect a change in settled law unless its terms clearly require such a construction. (*Sternberg Dredging Co. v. Estate of Sternberg* (1957), 10 Ill. 2d 328, 140 N.E.2d 125.) This settled law of insurance, according to defendant, requires that an offer of insurance originate from the prospective insured to the insurer for its acceptance or rejection. Defendant cites numerous cases in which particular insurance applications were held to create offers of coverage only, allowing the insurance company to reject or accept the application. (*Stramaglia v. Conservative Life Insurance Co.* (1943), 319 Ill. App. 20, 48 N.E.2d 719; *Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 358 N.E.2d 940.) We interpret section 143a—1 to prohibit insurers from rejecting the insured's acceptance of an offer of underinsured coverage and to clearly require this result. However, it is only when the insurer has accepted the insured for general liability coverage that the statute would prohibit insurers from rejecting underinsured protection. This does not destroy the underwriting function, since the insurance company retains the power to reject all coverage of the insured. See Ill. Rev. Stat. 1981, ch. 73, par. 755.19.

In implementing what we conclude to be the requirements of an offer under section 143a—1, we find persuasive the construction given by the Minnesota Supreme Court to a similar provision of Minnesota law requiring insurers to offer optional coverages, including underinsurance protection. In *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, the Minnesota Supreme Court held that a statute requiring insurers to offer, *inter alia*, underinsured motorist protection required the insurer to meet a four-part test to comply with the statute's requirement: (a) If the offer is made in other than face to face negotiations, the notification process must be commercially reasonable; (2) the insurer must specify the limits of its optional coverages and not merely offer them in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverages; and (4) the insured must be advised that optional coverages are available for a relatively modest increase in premium. A case decided under the Minnesota statute and resembling the offer

made in this case is *Kuchenmeister v. Illinois Farmers Insurance Co.* (Minn. 1981), 310 N.W.2d 86. There, the insured was injured in an automobile accident and sustained injuries in excess of the at-fault party's insurance. The insured brought a similar declaratory judgment action contending that no offer of underinsurance coverage had been made by the insurer. The notice of the optional coverage in that case which was sent to the insured stated: " 'Did you know that you may now have underinsured motorist and/or uninsured motorist coverage in amounts up to your bodily injury liability limits. If interested, contact your agent.' " (310 N.W.2d 86, 88.) In finding this notice insufficient, the court noted that it was contained at the bottom of a premium notice, was vague, and gave no explanation of the additional coverage.

Here, we find that although the defendant did offer the coverage in a commercially reasonable way by including the notice in a policy renewal statement (*Jacobson v. Illinois Farmers Insurance Co.* (Minn. 1978), 264 N.W.2d 804), absent from the offer was a description of the limits of the optional coverage, the cost of the coverage, and an intelligible description of underinsurance coverage. Defendant argues that it met the *Hastings* test because the offer gave the insured notice of the coverage in a commercially reasonable fashion, provided an explanation of underinsured protection by explaining that such coverage included bodily injury protection for the insured if he was injured in an accident caused by another driver who did not have adequate liability limits, told the insured to contact a Country Companies agent, and, in addition, the insured had a policy in his possession which provided a definition of underinsured vehicle and explained the manner in which underinsured coverage functions.

■■ We disagree. As we have noted, the offer made no mention of the cost of underinsured coverage (in this case a $16.60 premium would have provided coverage of $100,000/$300,000), and made no mention of the limits of coverage. In addition, the short, one-paragraph description contained in a letter advising the insured that his premium was being increased was not designed to intelligibly advise the insured of the additional coverage available. Nor can defendant now argue that the insured had a policy in his possession which explained underinsured coverage since the policy which defendant submitted to the court on the stipulated statement of facts contained no description of underinsurance coverage. The first mention of any policy providing a description of underinsurance coverage was in defendant's post-trial motion. Nevertheless, whether or not the insured did have such a policy, the notice provided by the defendant was deficient,

obscured as it was in a letter advising plaintiff of an increase in her premium, as we have noted above. This case is thus factually distinct from the authority cited by defendant.

Lastly, defendant asserts that the question of whether an offer of underinsurance coverage was made is moot because an affidavit filed by its senior claims agent discloses that the named insured, William Tucker, who is now deceased, advised the claims agent that Tucker received a copy of the notice of underinsurance coverage but did nothing to change his policy. Defendant suggests that the question of whether a proper offer was made in compliance with the statute is moot because Tucker had actual notice of the additional coverage. Plaintiff responds that the affidavit is inadmissible and that she objected to it at trial on grounds of hearsay.

A case is moot if it presents no real or existing controversy but rests upon abstract issues or issues which no longer exist because of the happening of certain events. (*Johnson v. Quern* (1980), 90 Ill. App. 3d 151, 412 N.E.2d 1082; *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736.) We find that the affidavit is admissible as a declaration against interest made by an unavailable declarant (see *Jones v. DeWig* (1974), 25 Ill. App. 3d 423, 323 N.E.2d 475), but the present case is not moot because this court has to determine if an offer was made as required by law. Merely because Tucker stated that he received the notice does not indicate whether the notice was sufficient to comply with the statutory requirement of an offer. As the trial court noted, the conclusion that the named insured received the notice and did not elect underinsurance coverage is not an admission that he understood what had been offered or that he had rejected the coverage. Since we find that the defendant made an insufficient offer under the requirements of the statute, the trial court's judgment implying underinsurance coverage in plaintiff's policy by operation of law in limits equal to her uninsured motorist coverage is affirmed.

For the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

MILLS, P.J., and WEBBER, J., concur.