SALLY HOLLAND *et al.*, Plaintiffs-Appellees, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 1—90—0608

Opinion filed June 28, 1991.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Roger LeRoy, of counsel), for appellant.

Law Offices of Patrick A. Murphy, of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant State Farm Insurance appeals from an adverse decision rendered subsequent to a bench trial. The trial court held defendant violated the Illinois Insurance Code by not offering optional uninsured motorist coverage when plaintiff purchased an automobile insurance policy in October 1983. Ill. Rev. Stat. 1983, ch. 73, par. 755a—2.

We affirm the trial court's holding.

The issues on appeal are (1) whether plaintiffs met their burden of showing defendant failed to provide plaintiff with the information required for offering the optional coverage (*Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548), and (2) if so, whether defendant's testimony adequately rebuts that showing.

■ The General Assembly enacted legislation imposing a duty on insurers to offer uninsured and underinsured motorist coverage to new and existing policyholders in an amount equal to the insured's bodily injury liability limits. Pub. Act 82—920, eff. Aug. 16, 1982.

In the process of renewing car insurance for herself and her husband, plaintiff Sally Holland (plaintiff) telephoned State Farm agent Gene Mueller's office in an effort to obtain better coverage than she was receiving under her current policy. It is undisputed that Mueller is an agent of State Farm (defendant). Plaintiff spoke with Mueller's secretary and received quotes for "medical pay" that would allow her more coverage for less premium. She did not discuss uninsured motorist coverage with the secretary, but made an appointment to apply for insurance.

In the conference with Mueller, defendant was given a copy of plaintiff's Allstate policy, made aware of its coverage and premiums, and knew plaintiffs sought a reduced premium. The coverage plaintiff obtained was the same coverage she had with her previous company, except for increased "medical pay."

Under the policy issued by defendant, plaintiff's coverage was 100/300 liability ($100,000 per person, $300,000 per occurrence); 15/30 uninsured motorist ($15,000 per person, $30,000 per occurrence); $100,000 medical pay; $50,000 property damage; $50 deductible; and road service. At that time, plaintiff signed a document stating she had been informed of the option to purchase uninsured coverage up to the liability limits of her policy and that she rejected the offer. Plaintiff's

policy was effective October 25, 1983, and was renewed every six months without changes through April 25, 1987.

On July 20, 1985, the Hollands sustained personal injuries in an accident with an uninsured motorist. Plaintiffs presented claims to defendant under the uninsured motorist provision of the policy issued by defendant, and defendant acknowledged coverage in limitations of 15/30 ($15,000 per person, $30,000 per occurrence) as expressed in the policy.

Plaintiff testified at the bench trial that she had no recollection of any discussion with Mueller regarding any coverage other than medical pay. She stated she never heard the words "uninsured motorist" or "underinsured motorist" in her conversation with him, nor did she understand what uninsured motorist coverage was when she left defendant's office.

Plaintiff contends that at no time was she advised that she was entitled to obtain coverage in an amount equal to her liability limits of 100/300, nor was she informed of the minor difference in premium costs had she chosen the optional 100/300 uninsured motorist coverage.

Plaintiff told the trial court that she was not aware that she was entitled to these limits on "uninsured" coverage until after the accident and that, had she known, she would have purchased the extra coverage because it was her habit to purchase greater protection even if at a higher rate. The evidence discloses that she did pay a premium higher than the defendant's original quote without complaint.

The testimony of defendant's agent does not appear to come from an independent recollection, but rather from a description of what he suggests were his usual procedures in discussing insurance coverage with prospective customers. He testified that his usual procedures consisted of always recommending that a new applicant obtain certain high limits of coverage and that the uninsured coverage be consistent with this recommendation. He noted that plaintiff had executed a document acknowledging her rejection of the opportunity to purchase uninsured coverage "up to an amount equal to my Automobile Bodily Injury Liability Limits." Plaintiff, however, contends that she signed this document because she "probably thought it was part of the application."

Defendant's agent further testified that it was his practice to always discuss costs of policies and to explain the marginal cost of extra coverage. He acknowledged, however, that at the time of the conference with plaintiff, he had only received a brief notification with respect to the new legislation rather than detailed guidelines or in-

structions explaining the newly required optional coverage, the conversation being approximately three months after the effective date of this amendment to the Insurance Code.

■ Illinois courts have established four criteria which must be met in order to comply with the provisions of the Insurance Code requiring the offer of optional uninsured motorist coverage:

(1.) Notification of the available option must be made in a commercially reasonable manner, if not done in face-to-face negotiations.

(2.) The insurer must specify the limits of its optional coverages and not merely offer them in general terms.

(3.) The insurer must intelligibly advise the insured of the nature of the optional coverages.

(4.) The insured must be advised that optional coverages are available for a relatively modest increase in premiums.

*Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425-26, 488 N.E.2d 548; *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956.

While the parties agree the first criterion has been met by the meeting between plaintiff and defendant's agent, evidence of compliance with the remaining three is certainly less clear.

The *Cloninger* court found that the defendant had complied with the criterion that required accurate description of the limits of the policy, but had not complied with explanations as to the nature of the uninsured motorist coverage.

In *Tucker*, however, the insurer had failed to describe the specific limitations of the policy in issue. Although plaintiff's and defendant's recollections regarding the conversation of October 1983 are sometimes vague or nonexistent, the trial court found plaintiff's testimony credible that she did not recall defendant explaining anything about uninsured or underinsured automobile insurance coverage to her. Further, the trial court was not persuaded that even defendant's customary practices in October 1983 complied with the criteria set forth in *Cloninger* and *Tucker*.

Apparently, defendant's agent erred in computing the premium charged plaintiff and nonetheless plaintiff knowingly paid the increased premium. Plaintiff suggests that such an error is proof that the "cost" prong of the *Cloninger* four-point test was not satisfied.

■ Defendant counters, and we agree, that the exact cost of the optional coverage need not be conveyed. *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 515 N.E.2d 1304.

■ The trial court found, however, that State Farm failed to satisfy the requirement that the insurer must intelligibly advise the insured as to the nature of the optional coverages. Accordingly, we believe that the plaintiff carried her burden of proof and proved a *prima facie* case.

Defendant next suggests that its agent's faint glimmer of a memory coupled with an explanation of his customary practices rises to the level of being unimpeached and uncontradicted testimony of a witness which cannot be arbitrarily disregarded by the trier of fact unless the testimony is inherently improbable, contradictory, unworthy of belief, evasive or equivocal. Defendant asserts that its agent recalls many details of the conversation between the parties while plaintiff remembers almost none of it.

■ In a bench trial, the trial court may determine the weight and credibility of the testimony of witnesses, may resolve inconsistencies and conflicts and render its decision accordingly. (*People v. Green* (1982), 104 Ill. App. 3d 278, 432 N.E.2d 937.) The findings and judgment of the trial court ought not to be overturned if there is any evidence in the record to support them. *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 473 N.E.2d 588.

■ In the case at bar, defendant's agent's testimony as to his usual procedures is contradicted by both the plaintiff's credible testimony and by the circumstantial fact that defendant had no specific instructional procedure at the time for advising new insureds of the optional coverage. A reviewing court cannot substitute its judgment on matters unless the findings are clearly against the manifest weight of the evidence. *MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 445 N.E.2d 418.

We believe, therefore, that plaintiff has carried her burden in establishing a *prima facie* case showing defendant's failure to observe at least two of the criteria required for compliance with the Insurance Code relating to optional coverage for uninsured motorists liability. We will not disturb the trial court's findings merely because one of the witnesses' testimony is not directly contradicted.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA, P.J., and WHITE, J., concur.